STATE OF MAINE                                          SUPERIOR COURT
SAGADAHOC, ss                                           CIVIL ACTION
                                                        DOCKET NO. CV-08-15
                                                        *A M H - B A C, - 12/7/2010*

RAINBOW PRODUCTIONS, INC.            )
                                     )
            Plaintiff,               )
                                     )
      v.                             )
                                     )
GREG POWERS ENTERTAINMENT,           )
INC. (a/k/a GPE, INC. and THE GREG   )
POWERS AGENCY),                      )
                                     )
            Defendant.               )

## DECISION AND JUDGMENT

This civil action came before the court for a two-day jury-waived trial on August 31 and September 1, 2010, during which the parties and their counsel presented evidence in the form of sworn testimony and exhibits. The hearing was recorded. After the hearing, the parties filed briefs and proposed findings. Based on the entire record, the court hereby makes and adopts the following findings of fact and conclusions of law, and renders judgment as set forth below.

### I.      Findings Of Fact

1. The Plaintiff, Rainbow Productions, Inc. ("Rainbow"), is a Maine corporation that, among other things, operates a retail music store at the Topsham Fair Mall in Topsham under the name Music & Moore. Music & Moore sells a variety of musical instruments, accessories, and books, and also provides instruction to students. Music instruction is an important part of Music & Moore's business, representing over 60% of its annual revenues. Music & Moore caters to families, and most of its music instruction is provided to students involved in high school and middle school band programs.

2. As of 2007, Defendant Greg Powers Entertainment, Inc. ("Powers") had been in business in Saco, Maine for approximately 15 years, selling musical instruments, audio equipment and related accessories.

3. In early 2007, Rainbow's principal, Larry Moore, learned that Greg Powers, the principal of Defendant, Greg Powers Entertainment, Inc. ("GPE"), was interested in selling a retail music store owned and operated by GPE that was located at 901 Portland Road in Saco. Mr. Moore had known Mr. Powers from high school and done business with GPE in the past. The opportunity to expand to Saco was of interest to Mr. Moore because it was in keeping with his plan to expand his business.

4. Thereafter, in May 2007, Messrs. Moore and Powers discussed the possible sale of GPE's Saco store at a barbecue at the Powers home in Saco. At that meeting, Mr. Moore explained the importance of Rainbow being open and ready for business by or before the beginning of the 2007-2008 school year, in order to capture the school band season. Mr. Powers was receptive to that schedule. Mr. Moore and Mr. Powers also discussed Rainbow's need for lesson rooms at the Saco store.

5. At some point during the summer of 2007, the parties agreed in principle that Rainbow would acquire most or all of GPE's inventory and open a store and lesson facility at GPE's Saco location. The precise details, however—such as what the specifications and furnishings of the lesson rooms were to be, and the price and quantity terms for the purchase of inventory—were left to be addressed in future discussions.

6. During August, Rainbow had several contractors visit the premises to provide estimates for work that needed to be done in order for Rainbow to open the retail store for business by September 1. Rainbow received estimates from Camille's Electric for electrical work, from Carpet Town for flooring, and from Devoe Floor to Ceiling for tiling and carpeting. Through no fault of

2

either party, Rainbow was not able to take occupancy by September 1. (Rainbow eventually paid contractors and others $5,014.18 for improvements to the Saco store, some of which have benefited GPE by enhancing the value of its space).

7. After Mr. Powers missed a meeting that had been set for October 9, Mr. Moore sent Mr. Powers a letter, dated October 10, together with a written "Offer to Purchase GPE (Greg Powers Entertainment Inc.) Business and Retail Assets" ("Offer"). In the Offer, Mr. Moore indicated his desire to take delivery of the retailing building and business and retail inventory by October 31, 2007. He further stated: "We would need the offices and any and all personal property belonging to GPE, Greg Powers, or Greg Powers Entertainment Inc. removed and building made ready for build-out." Rainbow proposed that GPE would be responsible for the construction of three lesson rooms in the basement.

8. Although the Offer was never signed, Mr. Powers orally indicated he would agree to its terms and requested only that it be modified so as to permit GPE to retain a few additional display cases—a request to which Mr. Moore readily agreed. On the other hand, the Offer left open some significant terms, such as price, description of the subject matter inventory, and specifications for the lesson rooms. The parties did not have a common understanding of these essential terms.

9. Mr. Powers was familiar with lesson rooms, and made certain assumptions about what Mr. Moore had in mind. Mr. Moore likewise assumed that Mr. Powers knew what he had in mind, but the two never actually reached any agreement regarding specifications for the lesson rooms.

10. Until mid-November 2007, Messrs. Moore and Powers communicated on a general level about their mutual plans, without reaching a detailed common understanding of what would actually happen. The absence of a detailed meeting of the minds was simultaneously neither party's fault and both parties' fault.

3

1919431.1

11. Caught up in his vision for Rainbow's new store, Mr. Moore moved ahead too quickly with his plans before he and Mr. Powers had reached an agreement. He seems to have assumed that GPE and Mr. Powers were in agreement with everything he had in mind, even though much of it was still not agreed upon. Likewise, Mr. Powers was focused mainly on his and his wife's objective of moving away from retail work. The result of this was that Rainbow and GPE moved forward with the sale before they had an integrated agreement, oral or written, defining their respective rights and obligations.

12. Mr. Moore apparently expected to find the GPE premises empty as of November 1, and ready for contractors to renovate, despite the fact that he and Mr. Powers had not reached any detailed agreement and had signed nothing reflecting their discussions as of November 1. Why Mr. Moore would reasonably expect GPE to close and clear out its store before it and Rainbow had signed any contract is unclear.

13. Because there was no integrated agreement, oral or written, as of November 1, GPE cannot be faulted for not closing and clearing out its store for Rainbow to move in. Likewise, GPE cannot be faulted for not beginning work on the lesson rooms in the absence of any written agreement.

14. Rainbow took occupancy of the premises on November 1 and at that time tendered to GPE a check in the amount of $1,250 in payment for the November rental of the premises and an electronic sign. Mr. Moore, his wife Sara, and Courtney Babbidge, who had been hired as the store manager, then spent the next several weeks cleaning the premises and removing trash and hundreds of cardboard boxes—filling several dumpsters in the process.

15. It was only in mid-November that the documentation of the agreement and a mutual understanding as to essential terms of the agreement started to catch up with the activity of both

4

parties. On November 17, the parties executed a Purchase and Sale Agreement ("P&S") prepared by Mr. Moore on Rainbow letterhead.

16. Under the P&S, Rainbow was to purchase from GPE three types of property – (a) Retail Inventory; (b) Business Inventory and (c) Rental Inventory. Rainbow also agreed in the same document to lease from GPE certain land and a building located on U. S. Route 1 in Saco, Maine as well as an electronic message sign.

17. Under the third and fourth bullet points in the P & S, Rainbow agreed to buy the "Business Inventory" and the "Rental Inventory". Moore made a payment for the Rental and the Business Inventory in the sum of $22,425.00 dated November 19, 2007. There is no dispute that the entire amount was paid and that Rainbow received everything agreed to be conveyed in this regard.

18. As for the "Retail Inventory," under the first bullet point of the P& S, Moore was supposed to value it "after the close of the GPE retail store." The agreement called for Moore's financing source (Androscoggin Bank) to pay off Power's floor plan financing (i.e., the Textron financing). Rainbow also agreed to pay "any remaining balance" owed to Powers beyond the financed amount. This was to be done after the retail inventory had been "validated and priced."

19. On December 8, 2007, Rainbow advised Gregory Powers's wife, Deb Powers, by e-mail that Rainbow (i.e., Larry Moore) had decided not to "validate" and price the Retail Inventory as it would take far too long to do, with Larry Moore writing in that e-mail to Deb Powers that it was not "fair to you and Greg to make you wait any longer."

20. Rainbow agreed in the December 8th e-mail that Rainbow would pay $55,443.00 for the Retail Inventory. Rainbow agreed that, after deducting from that amount the sum that Androscoggin Bank was paying (i.e., $26,720.00 from Androscoggin to Textron), the balance owing to Powers would be $28,723.00 for the Retail Inventory. Textron did receive the $26,720.00.

5

1919431.1

21. In that same December, 2007 e-mail, Mr. Moore told Mr. Powers that he would be making up the entire $28,723 "shortfall" on the Retail Inventory by paying part of it from additional financing from Androscoggin Bank. In his December 8th e-mail, Mr. Moore stated that he could immediately obtain $6,545 of the $28,723 balance that he owed for the retail inventory and that he could get that sum from his financing source as long as Powers marked the invoice in advance as being fully "paid". Mr. Moore wrote that Rainbow would immediately pay $6,545 and pay the balance of the $28,723– i.e., the $22,177.00 – "from another account." See Joint Exhibit 17. However, Rainbow never paid any of the $28,723 balance.

22. The P&S lacked specifications for the lesson rooms, although GPE did agree to have them ready for use in less than two weeks from the signing. The P&S also created some additional ambiguity in the parties' agreement. The P&S recites that it "is written for the sole purpose of purchase on [sic] Retail Inventory, Business Equipment, and Rental Equipment," despite the fact that it also covers the lesson rooms and describes the terms of a building lease.

23. Although the P&S states that Rainbow "agrees to lease from GPE [the Saco store] for no less than one year but no more than 100 years," the agreement itself expressly contemplated that "a specific lease" would be drafted and signed by the parties "at a later date." However, no such document was ever prepared, much less signed. Thus, in executing the P&S, the parties still failed to achieve a fully integrated agreement.

24. The lesson rooms were not completed by December 1, although Mr. Powers had himself and with others, done most of the work. Powers had agreed to install sound deadening carpet on the floors, ceilings, and walls of the lesson rooms. Although a hole was cut in the building's foundation on November 29 to accommodate a side entrance, framing of the rooms themselves did not begin until December 6. While the rooms were largely framed, not all of the walls had wallboard and the floor, ceilings and walls were only, at best, partially carpeted.

6

1919431.1

25. By December 27, the lesson rooms were nearly completed although some work remained. When Mrs. Powers asked Mr. Moore for the payment of the balance associated with the Retail Inventory, Mr. Moore responded that she would receive the money when he received completed lesson rooms. Mrs. Powers indicated that she would discuss the matter with her husband.

26. The next day, Mr. Moore sent a letter to Mr. and Mrs. Powers by email. In that letter, Mr. Moore informed Mr. and Mrs. Powers that Rainbow would be vacating the premises no later than January 15 due to delays in construction on GPE's part and other deadlines having been missed, which had prevented Rainbow from launching its business as planned. Mr. Moore indicated in his letter that he planned to remove Retail and Business Inventory for which he had paid in full, together with additional inventory in an amount equal to the amount that had been paid to Textron to release a UCC lien on the Peavy and Numark inventory Rainbow had purchased.

27. On December 30, Mrs. Powers (with the assistance of Mr. Shepardson and a Bob Wilson) removed some of the Retail Inventory from the premises and placed it in a locked trailer owned by Mr. Wilson located at the rear of the property. The value of the inventory removed by GPE was very close to the unpaid balance due from Rainbow on Retail Inventory.

28. Rainbow vacated the premises on January 9 or 10, 2008. Thereafter, the inventory that Mrs. Powers had removed was moved off-site to a building owned by one of GPE's employees, Mike Clough. The bulk of that inventory was subsequently moved to a building in Kingfield owned by the Powers sometime in the latter half of 2008. Some of the inventory has been sold, and the Powers have custody of the rest. The market value of the inventory has greatly declined since January 2007.

1919431.1

## II.   CONCLUSIONS OF LAW

The parties' contractual arrangements encompassed improvements to and occupancy of real estate and also covered physical inventory.

As to the lease, the clear indication in the P&S that the parties intended to enter into a long-term lease for between one and 100 years, beginning January 2008, to be memorialized in a document that never came into being.  GPE suggests that the court should interpret the tenancy as lasting at least a year, but the evidence affords no basis for the court to determine what would have been the terms of the long-term lease had it been memorialized.  As a result, the only conclusion permitted by the evidence is that Rainbow's occupancy of GPE's space was under a month to month tenancy terminable at will by the tenant on reasonable notice.  *See* 14 M.R.S. § 6017 (no specific notice requirement for termination of commercial tenancies at will).

As to the improvements, the absence of any meeting of the minds regarding the specifications for the lesson rooms, combined with the fact that Messrs. Moore and Powers were both familiar with music lesson rooms, means that the law will imply the missing provisions. "Notwithstanding the absence of an express provision respecting the quality of the work to be done or the manner of its performance in any oral or written construction contract, the law implies therein an undertaking to perform the work in a reasonably skillful and workmanlike manner, . . . ." *Gosselin v. Better Homes, Inc.*, Me., 256 A.2d 629, 639 (1969).  Thus, GPE was obligated to provide Rainbow with reasonably suitable lesson rooms, considering all the circumstances, including the time available to build them and the amount of rent payable for them.

The agreements regarding inventory of various kinds became sufficiently integrated to enable enforcement, and in fact have been fully performed as to the Rental and Business Inventory.  As to the Retail Inventory, neither party fully performed, and each party claims it was excused from full performance by the other's breach.

8

With that overview in mind, the analysis turns to the counts of the complaint and counterclaim.

*Rainbow Complaint Count 1 – Breach of Contract*

Rainbow failed to prove that GPE breached the contract to provide lesson rooms. Rainbow's photographs admittedly show some tasks remaining and that the rooms needed to be cleaned up, but these were not significant, especially considering the absence of any agreement as to the specifications for the rooms. In other words, GPE was in substantial compliance with its obligations. Moreover, before terminating the relationship, Rainbow did notify GPE in any meaningful way of how GPE's work fell short of Rainbow's expectations.

Had such notice been given and a reasonable opportunity to cure been given, Rainbow's claim of breach would be on better footing. However, the absence of any meeting of the minds regarding details of the lesson rooms, coupled with GPE's substantial compliance and Rainbow's failure to give GPE specific notice of the alleged shortcomings, means that Rainbow has failed to prove its breach of contract claim. *See Cellar Dwellers, Inc. v. D'Alessio, supra,* 2010 ME 32 at ¶ 16, 993 A.2d at 5 ("A material breach of contract is a non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end.").

Judgment is therefore granted against Rainbow on count I of the complaint.

*Rainbow Complaint Count II – Unjust Enrichment*

There was evidence at trial that Rainbow spent $5,014.18 in improvements to GPE's property. These expenditures were made with GPE's knowledge and consent. GPE accepted this benefit conferred on it by Rainbow under circumstances (Rainbow expected have use of the Saco store with proper lesson rooms, which never happened) that would make it inequitable for GPE to retain the value of the benefit without giving Rainbow consideration of equal value in return. *See Estate of Anderson,* 2010 ME 10, ¶ 10, 988 A.2d 977, 980 (elements of unjust enrichment).

9

1919431.1

However, Rainbow is not entitled to recover the full amount claimed because Rainbow has not proved that GPE retained a benefit equal to the full dollar amount spent by Rainbow. There was no evidence that GPE has actually realized any particular benefit from Rainbow's improvements. GPE did not need the lesson rooms it constructed for Rainbow, nor did it need the improvements made to the store area above. There is nothing to suggest that GPE would have paid to have the work done had Rainbow not done so. On the other hand, based on the amount spent, the nature of the work performed and the resulting enhancement of GPE's property, the court concludes that GPE would be unjustly enriched unless required to reimburse Rainbow $2,000.

Based on the entire record, the court awards Rainbow $2,000 on its unjust enrichment claim.

*Rainbow Complaint Count III - Wrongful Eviction*

Rainbow is no longer pursuing its wrongful eviction claim.

*Rainbow Complaint Count IV —Conversion*

Rainbow also claims that GPE converted Retail Inventory paid for by Rainbow. Here, Rainbow's claim fails for several reasons. First, because Rainbow failed to prove that GPE materially breached its agreement with Rainbow by failing to complete the lesson rooms in timely fashion, Rainbow was not entitled to withhold payment for the Retail Inventory. Second, Rainbow has not proved that it paid more than the value of the retail inventory it actually received. GPE's evidence established that it is owed $694.47, representing the difference in value between the inventory it secured and the partial payment still due to it from Rainbow.

For these reasons, the court renders judgment against Rainbow on count IV.

*GPE's Counterclaim Count I – Breach of Lease*

GPE claims Rainbow breached a lease agreement between the parties. The court agrees with GPE to a point but not with its entire claim. Although the P&S states that Rainbow "agrees to lease from GPE [the Saco store] for no less than one year but no more than 100 years" [Joint

10

Exhibit 1], the agreement itself expressly contemplated that "a specific lease" would be drafted and signed by the parties "at a later date." No such document was ever prepared, much less signed. All that existed between the parties with respect to the long-term lease was an agreement to agree, not an enforceable lease.

On the other hand, Rainbow did take occupancy and paid rent for November and December. The parties' dealings thus established a month-to-month tenancy at $1,500 per month. Rainbow failed to give the adequate notice of its termination, so it is liable to GPE for January rent. *See* 14 M.R.S. § 6002.[1]

For similar reasons, GPE is also entitled to damages of $500 for one month's rent for the sign. The parties clearly understood the sign rental to be directly tied to the lease of space— Rainbow would have no need to rent the sign if it were not occupying the space, but for the same reasons as articulated regarding the premises rent, GPE is only entitled to one month's sign rent.

*GPE's Counterclaim Count II—Amounts Due for Retail Inventory*

GPE also claims that Rainbow breached the agreement between the parties by failing to pay for retail inventory it acquired. To the extent that the value of the retail inventory recovered by GPE was less than the balance owed by Rainbow on retail inventory, GPE's claim is valid. The difference between the balance due and the value at the time of what GPE recovered, according to

---

[1]  The court's conclusion that there was no enforceable long-term lease agreement obviates consideration of Rainbow's argument that GPE failed to mitigate by attempting to re-rent the property. Both parties' post-hearing submittals focus on whether a landlord's statutory duty to mitigate under 14 M.R.S. § 6010-A applies to commercial leases. Based on the same analysis used by the Law Court with respect to the wrongful eviction section at section 6014 of the same subchapter of title 14 [RESIDENTIAL LANDLORDS AND TENANTS], the court agrees with Rainbow's position. *See* Rodriguez v. Tomes, 610 A.2d 262, 264 (Me. 1992) (illegal eviction statute applies to both residential and commercial leases). Like section 6014, section 6010-A on its face is not limited to residential tenancies, so this court sees no reason why it should not be construed, as was section 6014 in *Rodriguez,* to apply to both kinds of tenancy, the subchapter title notwithstanding. Were the court to reach the mitigation issue, it would come to the same conclusion—that GPE's claim for unpaid rent is limited to the month of January.

1919431.1

GPE's own accounting, was only $694.47. GPE argues that it should be entitled to recover more, namely the difference between the balance due and the *present* value of the inventory still held by GPE, with a credit to Rainbow for inventory sold by GPE since then. However, Rainbow has proved that GPE failed to mitigate its damages by making adequate efforts to resale the recovered inventory.

GPE has suggested that it did not sell the seized inventory because of a noncompetition agreement between the parties. This argument ignores the fact that Rainbow had, rightly or wrongly, terminated all aspects of all agreements between the parties. Moreover, even had the noncompetition provision been in effect, nothing prevented GPE from mitigating its damages by selling the retail inventory outside the geographical scope of the provision. For these reasons, GPE is not entitled to recover damages measured in terms of the subsequent decline in the value of what was recovered. This outcome makes it unnecessary to address Rainbow's argument that GPE was not entitled to "cover" as it did, under article 2 of the Maine Uniform Commercial Code.

Judgment is granted to GPE for $694.47 on its retail inventory claim.

*GPE's Damage to Property Claim*

GPE claims Rainbow owes it money for damage to GPE's property. Rainbow notes that the claim was not pleaded. To the extent it can be deemed tried by consent, GPE failed to prove Rainbow's liability on this claim. Rainbow and its contractors did detach and remove display equipment and light fixtures, but GPE failed to prove that any damage was caused or attributable to Rainbow.

## III. CONCLUSION

Netting the amounts awarded--$2,000 to Rainbow on Count II of the complaint and $2,694.47 to GPE on Counts I and II of the counterclaim-- against each other results in an award to Rainbow of $694.47. Considering the case as a whole, neither party prevailed, and the court

12

1919431.1

therefore directs that the parties each bear their own costs.   *See Runnells v. Quinn*, 2006 ME 7, ¶16, 890 A.2d 713, 717.

Judgment is hereby granted to Defendant Greg Powers Entertainment, Inc. against Plaintiff Rainbow Productions, Inc. for $694.47, each party to bear its own costs.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

DATED: December 7, 2010

A. M. Horton
Justice, Superior Court

1919431.1