2010 ME 32

**CELLAR DWELLERS, INC.**

v.

**Dominic D'ALESSIO Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 28, 2010.

Decided: April 6, 2010.

John F. Barnicle, Esq., Moncure & Barnicle, Topsham, ME, for Dominic D'Alessio.

C.H. Spurling, Esq., Spurling Law, Gardiner, ME, for Cellar Dwellers, Inc.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Dominic D'Alessio Jr. appeals from a judgment entered in the District Court (West Bath, *Worth, J.*) in favor of Cellar Dwellers, Inc. following a jury-waived trial on Cellar Dwellers' claims for breach of contract, quasi-contract, unjust enrichment, and enforcement of a mechanic's lien. In addition to awarding Cellar

Dwellers $6468.25 in damages, the court awarded penalties, prejudgment interest, and attorney fees pursuant to the prompt payment statute, *see* 10 M.R.S. §§ 1111–1120 (2009).[1] D'Alessio argues that the court erred because: (1) no competent evidence supports the court's finding that D'Alessio's actions constituted a material breach discharging Cellar Dwellers' contractual obligations; and (2) Cellar Dwellers was not entitled to penalties, interest, and attorney fees.[2] We affirm in part, vacate in part, and remand to the District Court for further proceedings.

## I. BACKGROUND

[¶ 2] Cellar Dwellers, a Maine corporation, provides plumbing and heating services through its sole shareholder and president, James Peacock, a licensed master plumber and oil burner technician. In 2006, Cellar Dwellers entered into three contracts with D'Alessio to install plumbing and heating in D'Alessio's new home in Brunswick.

### A. The Contracts

#### 1. Plumbing Contract

[¶ 3] In a written contract dated July 12, 2006, Cellar Dwellers agreed to install "Internal Plumbing" in D'Alessio's home for $28,995. The contract noted that the price was "accurate within 10%," and stated that payment would be rendered in three installments: $12,000 due at the "start of rough in"; $12,000 due at the "completion of the rough in"; and the remaining balance due upon "completion of [Cellar Dwellers'] work."

### 2. Heating Contract

[¶ 4] In a second written contract dated October 6, 2006, Cellar Dwellers agreed to install a "Hot Water Baseboard Heating System" in D'Alessio's home for $27,995. The contract described this price as "accurate within 5%," and stated that payment would be rendered in three installments: $10,000 due at the "start of the job"; $10,000 due upon "piping out of boiler and tank"; and the remaining balance due upon "completion of [Cellar Dwellers'] work."

### 3. Vacuum Contract

[¶ 5] In late 2006, Cellar Dwellers orally agreed to install a central vacuum system in D'Alessio's home. Although the parties never specified the cost for this job in writing, D'Alessio agreed to pay Cellar Dwellers' normal hourly rate.

### B. Performance of the Contracts

[¶ 6] Cellar Dwellers began work on D'Alessio's home in the fall of 2006. D'Alessio timely paid Cellar Dwellers the $12,000 and $10,000 initial installments in accordance with the Plumbing and Heating Contracts. In November 2006, through a change order, D'Alessio requested significant changes to the Plumbing Contract, generating $17,464.85 in additional expenses. D'Alessio timely and fully paid for these costs, and Cellar Dwellers completed the work called for in the change order. D'Alessio also made a second timely payment pursuant to the Plumbing Contract, after Cellar Dwellers' completion of the "rough in."[3]

---

1. Although entitled "Construction Contracts," we refer to this Act as the "prompt payment statute." *Jenkins, Inc. v. Walsh Bros., Inc.,* 2001 ME 98, ¶ 5 n. 3, 776 A.2d 1229, 1232.

2. D'Alessio also contends that the court erred in refusing to deem as admitted the allegations made in his counterclaims against Cellar Dwellers. We find no merit in this argument and do not discuss it further.

3. This payment was for $13,000, bringing the total amount D'Alessio paid toward the Plumbing Contract to $25,000.

[¶ 7] On December 19, 2006, Cellar Dwellers finished "piping out" the boiler and tank, triggering payment of the second $10,000 Heating Contract installment. No payment was made until late January 2007, when D'Alessio presented Cellar Dwellers with a $5000 check and promised full payment in "a week or two." Relying on this representation, Cellar Dwellers continued working and shortly thereafter received a second $5000 check. D'Alessio later instructed Cellar Dwellers not to cash the check, prompting Cellar Dwellers to stop working. Cellar Dwellers resumed work approximately two days later, assured by D'Alessio that the remaining $5000 would be forthcoming. Ultimately, D'Alessio paid $10,000 more, making a final $5000 payment on February 2, 2007. In total, Cellar Dwellers received $25,000 toward the Heating Contract, leaving a remaining balance of $2995 due upon completion of Cellar Dwellers' work.

[¶ 8] On January 29, 2007, Cellar Dwellers properly installed the central vacuum system and billed D'Alessio $2478.35. D'Alessio has not made a payment for these services.

[¶ 9] Cellar Dwellers repeatedly told D'Alessio that work would cease unless he made payments. In late February 2007, before completing the basement plumbing and heating, Cellar Dwellers withdrew from the job site. At this point, the value of the services and materials not yet provided to D'Alessio totaled $3000. The plumbing and heating in the upstairs living area was completely finished and, as the District Court later found, had been done in a workmanlike manner. Although the work called for by the Plumbing and Heating Contracts had not been completed, Cellar Dwellers sent D'Alessio several invoices after stopping work. D'Alessio contacted Cellar Dwellers to ascertain the total cost to finish the basement heating and plumbing installation, but the parties were never able to reach an agreement to complete the project.

C. Litigation

[¶ 10] In early April 2007, Cellar Dwellers filed a mechanic's lien against D'Alessio's property. *See* 10 M.R.S. §§ 3251–3269 (2009). Thereafter, Cellar Dwellers filed a four-count complaint against D'Alessio, claiming that it was entitled to enhanced damages pursuant to the prompt payment statute and alleging breach of contract, quasi-contract, unjust enrichment, and enforcement of the mechanic's lien. In his answer, D'Alessio asserted several affirmative defenses and counterclaims for breach of contract, negligence, and violation of the Home Construction Contracts Act (HCCA), *see* 10 M.R.S. §§ 1486–1490 (2009).

[¶ 11] A one-day trial was held in October 2008, after which the District Court entered a written judgment. The court found that the following "series of actions" by D'Alessio constituted a material breach of the parties' contracts, justifying Cellar Dwellers' departure from the job site before the plumbing and heating projects were completed:

> [F]ailure to pay the second $10,000 heating contract installment upon "piping out the boiler and tank"; payment, when it did occur, in less than the full amount; payment with a non-negotiable check; use of the basement for storage despite Mr. Peacock's objection and explanation; failure to pay for the central vacuum system within 20 days of invoice.

Contrary to D'Alessio's arguments at trial, the court found that D'Alessio had no valid reason to withhold payment to Cellar Dwellers, and ruled against him on his counterclaims for breach of contract, negligence, and violation of the HCCA.

[¶ 12] Regarding damages, the court awarded Cellar Dwellers contractual and equitable damages, as well as statutory remedies. Reasoning that D'Alessio owed Cellar Dwellers $9468.25,[4] and deducting $3000 (the value of the unfinished plumbing and heating work), the court awarded Cellar Dwellers $6468.25. Pursuant to the prompt payment statute, the court assessed prejudgment interest and a one percent monthly penalty against D'Alessio, accruing from February 18, 2007, on the amount due under the Vacuum Contract, and from February 26, 2007, on the remaining damages. Additionally, the court awarded Cellar Dwellers $10,000 in attorney fees.[5]

[¶ 13] Following judgment, the court denied D'Alessio's motion for findings of fact and conclusions of law. *See* M.R. Civ. P. 52(a). This appeal followed.

## II. DISCUSSION

### A. Material Breach

[¶ 14] D'Alessio contends that no competent evidence supports the court's finding that, at the time Cellar Dwellers withdrew from the job site, D'Alessio was in breach of the Heating and Plumbing Contracts. Specifically, D'Alessio argues that: (1) Cellar Dwellers waived any objection to the late payment of the second $10,000 installment required by the Heating Contract; (2) no contractual provision prohibited his use of the basement for storage;

and (3) any breach of the Vacuum Contract did not affect the Heating and Plumbing Contracts, which, D'Alessio contends, were separate contracts.

[¶ 15] Because D'Alessio did not have the burden of proof at trial on the breach of contract issue, we review his sufficiency of the evidence challenge for clear error. *See Garrison City Broad., Inc. v. York Obstetrics & Gynecology, P.A.,* 2009 ME 124, ¶ 12, 985 A.2d 465, 468. Accordingly, we "examine the record, and the reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the facts are supported by competent evidence." *Id.* The meaning and weight given to the exhibits and the testimony of witnesses by the court shall be "upheld unless clearly erroneous." *Id.* (citing *Jenkins, Inc. v. Walsh Bros., Inc.,* 2002 ME 168, ¶ 7, 810 A.2d 929, 933).[6]

[¶ 16] Contrary to D'Alessio's arguments, there is competent evidence in the record to support the court's finding that D'Alessio committed a material breach that discharged Cellar Dwellers' duties under the Heating and Plumbing Contracts. A material breach of contract "is a non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *Jenkins, Inc. v. Walsh Bros., Inc.,* 2001 ME 98, ¶ 13, 776

---

4. The court calculated that D'Alessio owed Cellar Dwellers $3994.90 on the Plumbing Contract, $2995 on the Heating Contract, and $2478.35 on the Vacuum Contract.

5. Although the court found that Cellar Dwellers incurred $11,786.11 in reasonable attorney fees and costs, it reduced this amount to $10,000, reasoning that Cellar Dwellers' failure to use a written contract that complied with the HCCA contributed to somewhat higher litigation costs than necessary.

6. When, as here, a request for factual findings is made pursuant to M.R. Civ. P. 52(a), we do not assume that the District Court made all the findings necessary to support its judgment. *Sargent v. Braun,* 2006 ME 96, ¶ 5, 902 A.2d 839, 840–41. Rather, we review the court's findings "to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Id.* ¶ 5, 902 A.2d at 841 (quotation marks omitted).

A.2d 1229, 1234 (quotation marks omitted); *see also Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044 (stating that "whether a breach has occurred . . . [is a] question [ ] of fact"). Although, as D'Alessio notes, the Heating and Plumbing Contracts are silent on the issue of commencement and completion dates, the court's supported findings that the "basement was not ready for further installation" and that D'Alessio "used the basement for storage despite [Cellar Dwellers'] objection and explanation," justify a determination that D'Alessio wrongly prevented Cellar Dwellers from rendering substantial performance within a reasonable time. *See* Restatement (Second) of Contracts § 33 cmt. d (1981) (explaining that when a contract does not specify the time for performance, courts presume that a "reasonable time" was intended). Given the facts of this case, we discern no error in the court's findings regarding the materiality of D'Alessio's breach. *See Morin Bldg. Prods. Co. v. Atl. Design & Constr. Co.*, 615 A.2d 239, 241 (Me.1992) ("Prevention of performance is a breach of contract that excuses further performance by the non-breaching party.").

## B. Prompt Payment Statute

[¶ 17] The prompt payment statute, 10 M.R.S. §§ 1111–1120, imposes penalties against owners, as well as contractors, who do not make payments in a timely fashion. *See Jenkins*, 2001 ME 98, ¶ 23, 776 A.2d at 1237. These statutory penalties act as "disincentives to withholding amounts due," and are "intended to augment damages that are traditionally available for contract or quantum meruit claims." *Id.* ¶¶ 24, 31, 776 A.2d at 1237, 1239. In determining whether the District Court properly imposed prompt payment interest and penalties, we review whether the factual findings bearing on this issue are supported by competent evidence. *See Jenkins*, 2002 ME 168, ¶¶ 5, 11, 810 A.2d at 932, 934.

[¶ 18] A finding that an owner breached a construction contract does not necessarily entitle a contractor to the remedies provided by the prompt payment statute. *See Jenkins*, 2001 ME 98, ¶ 31, 776 A.2d at 1239. Instead, the availability of prompt payment remedies depends upon whether payment has been "wrongfully withheld." *See* 10 M.R.S. § 1118(3). Guiding this determination is 10 M.R.S. § 1113, which sets forth several principles governing the payment obligations between owners and contractors.[7] First, payment must be made "strictly in accordance with the terms of the construction contract." 10 M.R.S. § 1113(1). Second,

---

7. Addressing an owner's payment obligations, 10 M.R.S. § 1113 (2009) provides:

Payment to a contractor for work is subject to the following terms.

**1. Contractual agreements.** The owner shall pay the contractor strictly in accordance with the terms of the construction contract.

**2. Invoices.** If the construction contract does not contain a provision governing the terms of payment, the contractor may invoice the owner for progress payments at the end of the billing period. The contractor may submit a final invoice for payment in full upon completion of the agreed upon work.

**3. Invoice payment terms.** Except as otherwise agreed, payment of interim and final invoices is due from the owner 20 days after the end of the billing period or 20 days after delivery of the invoice, whichever is later.

**4. Delayed Payments.** Except as otherwise agreed, if any progress or final payment to a contractor is delayed beyond the due date established in subsection 3, the owner shall pay the contractor interest on any unpaid balance due beginning on the 21st day, at an interest rate equal to that specified in Title 14, section 1602–C.

"the contractor may invoice the owner for progress payments at the end of the billing period," provided that the parties' contract does not include a provision governing the terms of payment.[8] 10 M.R.S. § 1113(2). Finally, except as otherwise agreed, payment is "due from the owner 20 days after the end of the billing period or 20 days after delivery of the invoice, whichever is later." 10 M.R.S. § 1113(3). Unless an owner has a valid excuse for nonpayment, *see* 10 M.R.S. § 1118(1), (3), payments not rendered within this time frame are considered wrongfully withheld.

[¶ 19] If payment has been wrongfully withheld, available remedies include prejudgment interest, a one percent monthly penalty on amounts wrongfully withheld, and attorney fees. *See* 10 M.R.S. §§ 1113(4), 1118(2), 1118(4). Regarding interest, if an owner fails to pay within the time period specified by section 1113(3), "the owner shall pay the contractor interest on any unpaid balance due beginning on the 21st day, at an interest rate equal to that specified in Title 14, section 1602–C." 10 M.R.S. § 1113(4). With regard to penalties, the amount to be awarded is "equal to 1% per month of all sums for which payment has wrongfully been withheld." 10 M.R.S. § 1118(2). As these provisions make clear, in order to properly calculate interest and penalties, reference must be made "to the specific amounts owed and the dates by which they should have been paid." *Jenkins,* 2001 ME 98, ¶ 27, 776 A.2d at 1238.

[¶ 20] Applying this framework, the District Court's findings, which are supported by competent evidence, justify the imposition of penalties and interest on the amount due pursuant to the Vacuum Contract. Cellar Dwellers completed the work and invoiced D'Alessio $2478.35 on January 29, 2007, meaning that payment was due twenty days later, on February 18, 2007.[9] *See* 10 M.R.S. § 1113(3), (4). Although penalties may not be imposed on any amount withheld that "bears a reasonable relation to the value of any claim held in good faith," 10 M.R.S. § 1118(3), competent evidence supports the court's finding that D'Alessio held no such good faith claim.

[¶ 21] However, the remaining penalties and interest are not justified by the court's findings. Because the Heating and Plumbing Contracts included specific provisions governing the terms of payment, D'Alessio's payment obligations were determined by those terms, and his alleged failure to promptly pay must also be considered in light of those terms. *See* 10 M.R.S. § 1113(1), (2). As the court found, the first and second Plumbing Contract installments were timely paid, as was the first installment in accordance with the Heating Contract. Although the second Heating Contract installment was paid late, the court found that this installment was fully paid by late January 2007, and thus did not factor into the $2995 balance owed on the Heating Contract.

[¶ 22] The remaining payments contemplated by the Heating and Plumbing Contracts were the final installment payments, due at the "completion of [Cellar

---

8. "Billing period" means "the time period for payment agreed to by 2 parties or, in the absence of an agreement, the calendar month within which work is performed." 10 M.R.S. § 1111(1) (2009).

9. The court's judgment states that interest and penalties "shall accrue from February 18, 2007." Although payment was due on February 18, 2007, interest and penalties actually begin accruing on the twenty-first day, *see* 10 M.R.S. § 1113(4), which would be February 19, 2007. This minor error should be corrected on remand.

Dwellers'] work." Significantly, the court found that Cellar Dwellers "did not complete the plumbing or heating service in [D'Alessio]'s basement" before it withdrew from the worksite. Therefore, although Cellar Dwellers' departure was warranted, because Cellar Dwellers never completed the work, the final installment payments were never triggered. Though invoiced, the balances were not due,[10] and, although Cellar Dwellers can collect general contract damages and interest, prompt payment penalties and interest may not be imposed on these amounts. *See Jenkins,* 2001 ME 98, ¶¶ 23–29, 776 A.2d at 1237–39. Consequently, we vacate the award of prejudgment interest and penalties on these amounts.

[¶ 23] Given our conclusion regarding penalties and interest, we must also vacate the award of attorney fees. The only authority for the award of attorney fees in this matter is found in the prompt payment statute. *See id.* ¶ 30, 776 A.2d at 1239. Title 10 M.R.S. § 1118(4) provides that "the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter must be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses." The District Court's award of $10,000 in attorney fees was based upon its mistaken conclusion that D'Alessio's breach of the Plumbing and Heating Contracts constituted a violation of the prompt payment statute. Because we conclude that only the $2478.35 due pursuant to the Vacuum Contract was "wrongfully withheld," on remand, the court must determine reason-

able attorney fees based upon Cellar Dwellers' entitlement to prompt payment remedies for this amount.

The entry is:

That portion of the court's judgment awarding penalties and prejudgment interest on amounts due pursuant to the Plumbing and Heating Contracts is vacated. That portion of the court's judgment awarding penalties and prejudgment interest on amounts due pursuant to the Vacuum Contract is amended to begin accrual on February 19, 2007. The award of attorney fees is vacated and remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

---

10. On February 6, 2007, Cellar Dwellers billed D'Alessio $5000 for "firing up" the heating system. Because the provisions governing the terms of payment in the Heating and Plumbing Contracts state that the remaining payments were not due until the "completion of [Cellar Dwellers'] work," this invoice did not trigger the protections of the prompt payment statute. *See* 10 M.R.S. § 1113(1), (2). Indeed, the court did not consider D'Alessio's refusal to pay this bill as a factor supporting its finding of a material breach.