MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2019 ME 175
Docket:        BCD-18-358
Argued:        October 7, 2019
Decided:       December 30, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

FORTNEY & WEYGANDT, INC.

v.

LEWISTON DMEP IX, LLC, et al.

HJELM, J.

[¶1]   In three cases arising from a set of commercial construction projects, Lewiston DMEP IX, LLC, et al. (collectively, GBT),[1] a group of real estate developers, appeal from a combined judgment entered in the Business and Consumer Docket (*Murphy, J.*) after a consolidated jury-waived trial.  In the judgment, the trial court determined that, in addition to damages for breach of contract, the general contractor, Fortney & Weygandt, Inc. (F&W), was entitled to remedies, including attorney fees, pursuant to Maine's prompt payment statutes, 10 M.R.S. §§ 1111-1120 (2018); that F&W was also entitled to attorney

---

[1]  Adopting the practice of the trial court and the parties, we refer to the nine appellants in this matter collectively as GBT.  The appellants are Lewiston DMEP IX, LLC; Auburn DMEP IX, LLC; Turner DMEP X, LLC; West Paris DMEP X, LLC; Oakland DMEP IX, LLC; Dollar Texas Properties IX, LLC; Dollar Texas Properties X, LLC; Dollar Properties East, LLC; and GBT Realty Corporation.

2

fees pursuant to the terms of the parties' contract; and, addressing GBT's counterclaims, that GBT was estopped from seeking to enforce a contractual right to liquidated damages against F&W. We affirm the judgment with respect to GBT's counterclaims for liquidated damages. As to the prompt payment remedies allowed to F&W, we affirm in part but vacate in part and remand for reconsideration of damages. Finally, although F&W is entitled to an award of attorney fees and costs pursuant to the prompt payment statutes, we vacate the portion of the judgment allowing F&W any separate recovery of attorney fees pursuant to the parties' contract.

## I. BACKGROUND

[¶2] We draw the following account of this case from the procedural record and from the facts as found by the trial court, which are supported by competent evidence in the record. *See Vt. Mut. Ins. Co. v. Ben-Ami*, 2018 ME 125, ¶ 2, 193 A.3d 178.

[¶3] In 2014, GBT, a commercial real estate developer based in Tennessee, entered into a contract with F&W, a general contractor based in Ohio, for F&W to construct five retail-store buildings in Maine. The terms of the parties' agreement included a date by which each building project would reach "substantial completion," a term defined in the agreement as "sufficiently

complete in accordance with the Contract Documents so that the Owner may occupy or utilize the Project . . . for the use for which it is intended, without unscheduled disruption." According to the contract documents, if a project had not reached substantial completion by the contracted date, F&W would owe GBT liquidated damages calculated at a specific rate.

[¶4] For a number of reasons, including unusually harsh winter weather conditions and delays caused by GBT's own conduct, none of the five projects reached substantial completion by the contracted dates. As delays arose, F&W employees notified GBT and requested extensions of the substantial completion dates. At the same time, throughout the construction process, F&W employees also submitted a succession of revised schedules to GBT for each project, often indicating substantial completion dates that were later than the contracted dates. Frequently, GBT did not respond to these notifications and updated schedules.[2] In some of its communications with F&W, however, GBT signaled its acknowledgement that the substantial completion dates had been

---

[2] Even beyond the absence of any complaints by GBT about schedule changes, the timeline for one of the projects—Lewiston—was extended pursuant to GBT's express request. When F&W sent an updated schedule in response to that request, a GBT representative indicated agreement with the extended completion date and cautioned F&W *not* to "finish early." When F&W asked GBT to issue a change order to update the substantial completion date that GBT itself requested, GBT agreed to do so but never actually issued the change order.

4

extended.[3]  In addition, several times, GBT's vice president of construction told F&W representatives that time extensions would be addressed after the projects were complete, with GBT to issue a final, no-cost change order that would extend the contracted substantial completion dates for all five projects.[4]

[¶5]  Even after the contracted substantial completion dates had passed and continuing as late as August of 2015, GBT issued dozens of change orders for the projects, expanding the scope of F&W's work for a number of reasons, including unforeseen site issues, weather conditions, and changes to landscaping plans.

[¶6]  Previously, GBT had entered into contracts for F&W to construct nine stores in Pennsylvania and Ohio, which would be used by the same third-party retailer that was to occupy the Maine stores.  The contract documents for those out-of-state projects were the same as the ones used for the Maine projects.  Although most of the Pennsylvania and Ohio projects

---

[3]  For example, on January 30, 2015, the third of the five contracted dates, a GBT employee sent an email to a F&W employee purportedly setting "new dates" for four of the five projects.  F&W employees understood these "new dates" to be updated substantial completion dates.

[4] A contracted date of substantial completion could be amended only through a change order. The change order form, which only GBT could create, edit, or issue, included a space to indicate the number of days by which the project time would need to be extended. Several times, after GBT issued a change order indicating that the project time would be changed by zero days, F&W employees manually crossed out the zero and wrote numbers in an attempt to document time extensions that it believed GBT had agreed to.  GBT gave no response to these manual entries.

reached substantial completion after the contracted dates had passed, GBT did not seek liquidated damages in any of those instances.

[¶7] As the result of GBT's apparent acquiescence to time extensions as manifested by a combination of its statements, conduct, and silence, F&W employees believed that GBT had agreed to the updated timelines and that GBT would not seek liquidated damages if the projects reached substantial completion after the originally-contracted dates. Because F&W relied on its belief that GBT was agreeing to these extensions, F&W continued to work until August of 2015 even though GBT had stopped making progress payments in June. For the same reason, F&W did not insist that GBT issue change orders extending the contracted substantial completion dates as delays arose. The court concluded that, given the totality of the circumstances, F&W's belief that GBT had agreed to the extended dates was reasonable and justified, as was F&W's reliance on those changes.

[¶8] Although GBT stopped paying F&W in June, it actually had decided to discontinue payments two months earlier. GBT did not, however, notify F&W of its decision at that time. When F&W's president contacted GBT and asked why the payments had stopped and whether they would resume, he received no response. Because of GBT's nonpayment, F&W stopped working on the

6

projects on August 7, 2015, after notifying GBT, but it remained ready and able to resume work if GBT were to pay the overdue invoices and issue change orders. Instead of doing that, GBT sent letters to F&W attempting to impose liquidated damages calculated on a per diem basis from the original contracted substantial completion dates.

[¶9] In September and October of 2015, F&W commenced three separate actions against GBT in the Superior Court (Kennebec, Androscoggin, and Oxford Counties), alleging breach of contract and violation of the prompt payment statutes, and seeking enforcement of mechanic's liens. GBT filed counterclaims seeking liquidated damages and damages for breach of contract based on allegations that some of F&W's work was incomplete or defective.[5] The three matters were transferred in the interim to the Business and Consumer Docket.

[¶10] GBT and F&W each filed multiple motions for summary judgment. After a hearing, the court (*Murphy, J.*) entered summary judgments in favor of F&W on its claims for breach of contract, concluding as a matter of law that

---

[5] Additionally, in eighteen separate but related matters, a number of subcontractors filed contract- and lien-related claims against F&W and GBT, and a flurry of counterclaims and crossclaims ensued among all of the parties. Ultimately, all claims except for those solely between F&W and GBT were resolved and are not part of this appeal.

F&W was entitled to payment on all of its unpaid invoices.[6]  The court also entered summary judgments in favor of F&W on portions of GBT's counterclaims that alleged defective or incomplete work by F&W.  The court denied the portion of F&W's motions seeking judgments on GBT's counterclaims for liquidated damages, which F&W asserted were barred by waiver and equitable estoppel, because the court concluded that there were issues of material fact concerning those affirmative defenses.  The summary judgment proceedings also did not resolve F&W's claims for an award of prompt payment remedies or its claims for enforcement of mechanic's liens.  On this appeal, neither party challenges any aspect of the court's summary judgment order.

[¶11]  In November of 2017 and January of 2018, the court held a nine-day consolidated jury-waived trial on the remaining issues.  After being presented with the testimony of many witnesses and a mountain of documentary exhibits, the court issued a fifty-eight-page combined judgment containing detailed findings.  The court determined that F&W was entitled to a judgment on GBT's counterclaims for liquidated damages because, through its

---

[6] This included an invoice for amounts that GBT withheld as "retainage," which was a contractual ten-percent withholding from the amount due on each progress payment made before substantial completion.

8

statements, conduct, and silence, GBT had waived and was equitably estopped from asserting such claims; and that F&W was entitled to penalties, interest, and attorney fees, all pursuant to the prompt payment statutes.[7]

[¶12] GBT did not file a motion for amended or additional findings, *see* M.R. Civ. P. 52(b), or any other post-judgment motion. For its part, F&W moved for the court to amend the judgment, *see* M.R. Civ. P. 59(e), by adding a determination that it was entitled to attorney fees and costs based not only on the prompt payment statutes but also pursuant to the terms of the parties' contract. Over GBT's objection, the court granted F&W's motion and amended the combined judgment accordingly.

[¶13] GBT appeals to us from the combined judgment.

## II. DISCUSSION

[¶14] GBT asserts that the trial court erred in three of its determinations: that the doctrines of equitable estoppel and waiver barred its claims against F&W for liquidated damages; that F&W was entitled to prompt payment

---

[7] The court also entered a judgment in F&W's favor on GBT's remaining counterclaims alleging incomplete or defective work. GBT does not challenge that portion of the court's judgment on appeal, and we do not discuss it further. Additionally, although the judgment left F&W's claims for enforcement of mechanic's liens unresolved, those counts were dismissed during the pendency of this appeal after we raised the issue during oral argument, resulting in a final judgment on the claims that are before us. *See Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC*, 2018 ME 35, ¶ 6, 180 A.3d 1091 ("Absent an exception to the final judgment rule, a trial court's decision is not appealable unless it resolves all claims against all parties.").

remedies; and that the terms of the parties' contract allowed F&W to recover attorney fees and costs. We address each of those arguments in turn.

A.    Equitable Estoppel[8]

[¶15]   GBT challenges the sufficiency of the evidence supporting the court's findings on the elements of equitable estoppel. We review a judgment entered on equitable estoppel grounds "for clear error as to factual findings and for abuse of discretion as to the application of principles of equity to those facts." *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 15, 964 A.2d 630. "An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

[¶16]   Equitable estoppel is an affirmative defense predicated on the principle that "[o]ne who has induced another to believe what is untrue may not later assert the truth." *City of Auburn v. Desgrosseilliers*, 578 A.2d 712, 714

---

[8] Because we affirm the judgment in F&W's favor on GBT's counterclaims for liquidated damages based on the doctrine of equitable estoppel, we need not and therefore do not reach GBT's contention that the court erred by concluding that F&W also established its affirmative defense of waiver, which is the voluntary or intentional relinquishment of a known right—here, the right to seek liquidated damages. *See Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 26, 980 A.2d 1270.

(Me. 1990) (quotation marks omitted); *see* M.R. Civ. P. 8(c); *Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630. The doctrine "precludes a party from asserting rights which might perhaps have otherwise existed, against another person who has in good faith relied upon [the party's] conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630 (alteration omitted) (quotation marks omitted). "Equitable estoppel requires a misrepresentation that may arise through a combination of misleading statements, conduct, or silence." *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 27, 980 A.2d 1270 (quotation marks omitted); *see Pelletier*, 2009 ME 11, ¶ 18, 964 A.2d 630 ("A misrepresentation need not consist solely of an affirmative statement . . . .").

[¶17] The court's decision in this case was based on a combination of all three forms of misrepresentations—statements, conduct, and silence—and each element of the court's analysis, described below, was supported by the record and consistent with the law.

[¶18] First, GBT made misleading statements. For example, the court found that a GBT employee expressly told F&W employees that, once the projects were complete, GBT would issue a final change order updating the

substantial completion dates.  Further, the court found that on the third of the five contracted substantial completion dates, another GBT employee communicated a set of "new dates" to F&W, listing dates that were well beyond the contracted dates.

[¶19]  Second, GBT's conduct was misleading.  As the court found, in almost all of the parties' nine similar out-of-state projects that were governed by identical contracts, F&W did not meet the substantial completion dates, and GBT did not seek to assess liquidated damages.  Additionally, on the Maine projects, GBT issued many change orders calling for different or additional work that F&W was to perform after the contracted dates had passed.

[¶20]  Finally, GBT's silence in response to F&W's multiple requests for time extensions was misleading, especially in the context of GBT's direction that F&W should not be concerned with the timeline.[9]

[¶21] These findings are supported by competent evidence in the record and, contrary to GBT's argument, are not insufficient as a matter of law to support the court's determination that, in various ways, GBT misrepresented

---

[9] As the court acknowledged, GBT had no contractual duty to object to F&W's requests for time extensions.  Although "[e]quitable estoppel based on a party's silence will only be applied when it is shown by clear and satisfactory proof that the party was silent when he had a duty to speak," *Dep't of Human Servs. v. Bell*, 1998 ME 123, ¶ 8, 711 A.2d 1292 (alterations omitted) (quotation marks omitted), the court did not err by considering GBT's silence in combination with other relevant evidence in determining that GBT had misrepresented its intentions to F&W.

12

its intentions with regard to liquidated damages. Competent record evidence, which we describe above, *see supra* ¶ 7, also supports the court's findings that F&W relied on GBT's misrepresentational acts and omissions and that F&W's reliance was both "justified"—i.e., reasonable—and detrimental.[10] *See, e.g.*, *Cty. Forest Prods., Inc. v. Green Mountain Agency, Inc.*, 2000 ME 161, ¶¶ 8-15, 25-28, 758 A.2d 59.

[¶22] GBT also contends that the court could not properly apply the doctrine of equitable estoppel absent evidence that GBT explicitly told F&W that liquidated damages would *not* be assessed. We are unpersuaded. As the trial court found, liquidated damages were inextricably linked to the substantial completion dates, so the combination of GBT's misleading statements and its silence regarding those dates amounted to misrepresentations about its intent to assess liquidated damages. *See Pelletier*,

---

[10] Given the court's findings described in the text, we are also unpersuaded by GBT's argument that the court failed to make sufficiently detailed findings that F&W relied *to its detriment* on GBT's misrepresentations. Even if the court's express findings were insufficient, however, because GBT failed to request amended or additional findings pursuant to Maine Rule of Civil Procedure 52(b), we would infer that the findings were made because they are supported by the record evidence. *See Doe v. Tierney*, 2018 ME 101, ¶ 15, 189 A.3d 756 ("[I]n the absence of a motion for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b), we will infer that the trial court made any necessary findings that would be supported by evidence in the record to support its ultimate conclusion."). The same is true for GBT's argument that the court should have engaged in a more detailed analysis to equitably adjust the substantial completion dates.

2009 ME 11, ¶ 18, 964 A.2d 630 ("A misrepresentation need not consist solely of an affirmative statement . . . .").

[¶23]  The court's findings do not contain clear error, and its ultimate determination that equitable estoppel barred GBT's claim for liquidated damages was well within its discretion.

B.      Prompt Payment Remedies

[¶24]  GBT next argues that the trial court erred by awarding F&W any remedies pursuant to Maine's prompt payment statutes, 10 M.R.S. §§ 1111-1120.  GBT also asserts more narrowly that the court erred by including the unpaid retainage invoice in the amount subject to prompt payment remedies and that, pursuant to section 1118(3), the court should have excluded from the calculation of those remedies at least the amount that the court found GBT had withheld in good faith.  On an appeal addressing a judgment on a statutory prompt payment claim, we review issues of law de novo and the trial court's factual findings for clear error.  *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 7, 770 A.2d 97; *see Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 17, 993 A.2d 1 (reviewing factual findings bearing on the issue of prompt payment remedies for clear error).

14

[¶25]  It was undisputed that GBT withheld payment on several invoices for progress payments and retainage beyond the twenty-day limit prescribed by the prompt payment statutes.  In total, those unpaid amounts approached $1.5 million.  Through the combination of the summary judgment and determinations reached after the trial, the court concluded that F&W was entitled to be paid for all of those invoiced amounts and that GBT did not have a good faith basis to withhold payments based on any contention that F&W's work was incomplete or defective.  Although, for that reason, the court committed no error in determining that F&W was entitled generally to remedies created by the prompt payment statutes, including on the retainage payment withheld, we conclude that the court did err in a different aspect of its analysis.  The error arises because the court failed to consider the mitigating effect of its finding that GBT had, in good faith, withheld $498,000 as liquidated damages that it claimed were contractually owed by F&W.

[¶26]  The prompt payment statutes are a collection of rules governing payment between or among parties to construction contracts in a way that "augment[s] damages that are traditionally available for contract or quantum meruit claims."  *Jenkins, Inc. v. Walsh Bros., Inc.*, 2001 ME 98, ¶ 24, 776 A.2d

1229. The statutory remedies can comprise interest, penalties, and attorney fees. *See* 10 M.R.S. §§ 1113, 1118.

[¶27] Section 1113 governs payments by "owner[s]" to "contractor[s]."[11] Here, GBT was the owner of the properties, and F&W was a contractor. *See* 10 M.R.S. § 1113(3), (6). Absent some other agreement between the parties, section 1113(3) requires an owner to pay an invoice within twenty days after either the billing period ends or the invoice is delivered, whichever is later. If a payment is not made before the applicable deadline, "the owner shall pay the contractor interest on any unpaid balance due beginning on the 21st day," 10 M.R.S. § 1113(4), and penalties are to be awarded in "an amount equal to 1% per month of all sums for which payment has wrongfully been withheld," 10 M.R.S. § 1118(2). In addition, the "substantially prevailing party" is entitled to an award of attorney fees and expenses. 10 M.R.S. § 1118(4); *see Jenkins*, 2001 ME 98, ¶ 31, 776 A.2d 1229 (explaining that the attorney fees remedy is available only to a party who succeeds in demonstrating its entitlement to the other prompt payment remedies).

[¶28] In some circumstances, however, an owner-obligor is statutorily entitled to withhold payments without incurring liability pursuant to the

---

[11] Title 10 M.R.S. § 1114 (2018) governs payments by a "contractor" to a "subcontractor" or by a subcontractor to a "material supplier." *See* 10 M.R.S. § 1111 (2018) (defining those terms).

prompt payment statutes. "A payment is not deemed to be wrongfully withheld if it bears a reasonable relation to the value of *any* claim held in good faith by the owner, contractor or subcontractor against which an invoicing contractor, subcontractor or material supplier is seeking to recover payment." 10 M.R.S. § 1118(3) (emphasis added); *see Cellar Dwellers*, 2010 ME 32, ¶ 18, 993 A.2d 1 ("[T]he availability of prompt payment remedies depends upon whether payment has been *wrongfully* withheld." (emphasis added) (quotation marks omitted)); *Jenkins*, 2001 ME 98, ¶ 24, 776 A.2d 1229. The statute also provides that an owner may withhold payment "in whole or in part under a construction contract in an amount equalling the value of any good faith claims against an invoicing contractor, subcontractor or material supplier." 10 M.R.S. § 1118(1).

[¶29] We are unpersuaded by GBT's arguments that the trial court should not have imposed *any* prompt payment statute remedies, or that the court should have excluded the unpaid retainage invoice from the amount subject to prompt payment remedies. Even if we were persuaded by GBT's argument that F&W was required to have performed in accordance with the contract in order to be entitled to prompt payment remedies pursuant to section 1113, the court found that F&W did so perform—a finding that was not

clearly erroneous.[12]   Additionally, in its summary judgment order, the trial court determined as matter of law that F&W was entitled to damages based on the full amount of all of the unpaid invoices, including the retainage.  GBT has not challenged that conclusion, thereby vitiating its contention that F&W failed to prove that it completed the steps necessary to be entitled to the retainage withheld and that the court therefore erred by considering that withholding to be "wrongful."  We also decline to disturb the trial court's determination that GBT's claims alleging defective or incomplete work were not held in good faith.

[¶30]   This leaves GBT's assertion that the court erred by imposing prompt payment remedies on the entire amount that GBT withheld when the court found that some of that amount was withheld based on GBT's good-faith belief that it was entitled to recover liquidated damages from F&W.  More specifically,  the court found that, even though GBT was ultimately unsuccessful on the merits, GBT withheld $498,000 as liquidated damages in good faith.[13]

---

[12]   Section 1114(3) requires a contractor to pay a subcontractor, or a subcontractor to pay a material supplier, within a specific time "when a subcontractor or material supplier has performed in accordance with the provisions of a contract."  Section 1113 does not contain similar language. Given the court's finding that F&W *did* perform pursuant to the contract, we need not address the question of whether, despite that difference in the statutes, the same requirement should be imposed in disputes governed by section 1113.

[13]   Those determinations were not incompatible because GBT could have believed in good faith that its claims for liquidated damages were legitimate even though, on the merits, it ultimately did not prevail on those claims.

Despite that finding, the court ultimately concluded that F&W was entitled to prompt payment remedies calculated on the basis of *all* payments that GBT withheld—including the amount withheld in good faith as liquidated damages—because the total "amount withheld far exceed[ed] the [value] of [GBT's] potential liquidated damages [claims]."

[¶31]  This conclusion is affected by an erroneous application of sections 1118(1) and 1118(3).  Those statutory provisions do not provide for the court to simply weigh the value of a claim held in good faith against the total amount withheld and then, where the two are not in some measure of balance, impose prompt pay remedies based on the total amount withheld.  Further, there need not be a direct connection between the contractor's charges for goods and services set out in the invoices and the reason why the obligor withheld payment.  *See* 10 M.R.S. § 1118(1).  Here, for example, the amount that GBT withheld was not based on a good faith dispute about the charges in the invoices themselves, but rather was grounded in an extrinsic claim against F&W arising from the projects at issue.

[¶32]  Instead, pursuant to the statutes, "[p]enalties may not be imposed . . . on *any* amount withheld that bears a reasonable relation to the value of *any* claim held in good faith." *Jenkins*, 2001 ME 98, ¶ 24, 776 A.2d 1229 (emphases

added) (quotation marks omitted); *see* 10 M.R.S. § 1118(3); *Cellar Dwellers*, 2010 ME 32, ¶ 20, 993 A.2d 1.  Consequently, the trial court should have, in some way, accounted for the value of GBT's liquidated damages claims held in good faith when considering the amount that is subject to prompt payment statute remedies available to F&W.

[¶33]  For these reasons, we vacate the portion of the judgment denying GBT any statutory accommodation based on the amount it withheld in good faith in the court's determination of damages to which F&W is entitled pursuant to the prompt payment statutes, and we remand for the court to reconsider and recalculate that portion of the award.

C.    Attorney Fees Pursuant to the Contract

[¶34]  Finally, GBT argues that the court erred when it concluded that, apart from an award of attorney fees that is available pursuant to the prompt pay statutes, F&W was also entitled to attorney fees pursuant to the terms of the parties' contract.[14]  "We review the meaning of a contract de novo and interpret an unambiguous provision according to the plain meaning of its terms." *Kondaur Capital Corp. v. Hankins*, 2011 ME 82, ¶ 19, 25 A.3d 960.

---

[14] Although the court concluded that F&W is entitled to its attorney fees and expenses, at oral argument the parties indicated that they had not yet filed submissions addressing the amount of awardable fees and expenses.

20

[¶35] The contract documents provided for a tiered approach to "dispute mitigation or resolution." The first of the dispute resolution mechanisms was for the parties to engage in "good faith direct discussions." If a dispute remained unresolved after those discussions, the parties were to engage in mediation. The contract went on to provide that, if the issue was still unresolved, the parties then were to submit the matter to a "binding dispute resolution procedure," prescribed specifically as arbitration.[15] The arbitration provisions of the parties' contract stated:

> 12.4 BINDING DISPUTE RESOLUTION If the matter is unresolved after submission of the matter to a mitigation procedure or to mediation, the Parties shall submit the matter to *the binding dispute resolution procedure selected below*.
>
>> *Arbitration* using the current Construction Industry Arbitration Rules of the AAA or the Parties may mutually agree to select another set of arbitration rules. The administration of the arbitration shall be as mutually agreed by the Parties. If the Parties cannot agree, then it shall be administered by AAA.
>>
>> *12.4.1 The costs of any binding dispute resolution procedures and reasonable attorneys' fees shall be borne by the non-prevailing Party, as determined by the adjudicator of the dispute.*
>>
>> 12.4.2. VENUE The venue of any binding dispute resolution procedure shall be the location of the Project, unless the Parties agree on a mutually convenient location.

---

[15] The parties' submissions on appeal suggest that, notwithstanding this contractual provision, they did not avail themselves of the binding dispute resolution process.

(Emphases added.)

[¶36]    The contract therefore unambiguously states that the nonprevailing party will bear attorney fees and costs related to "binding dispute resolution procedures," with "*the* binding dispute resolution procedure" contractually specified to be arbitration.    The attorney fees provision contained in this "binding dispute resolution" section of the contract plainly does not contemplate an award of attorney fees outside the context of arbitration, and the trial court therefore erred when it concluded otherwise.[16] This, however, does not affect the court's determination that F&W's is entitled to its attorney fees and costs pursuant to separate authority, namely, the prompt payment statutes.

## III.  CONCLUSION

[¶37] In its thorough analysis, the court did not err or abuse its discretion by concluding that GBT was equitably estopped from recovering liquidated damages against F&W.  We therefore affirm, in full, the judgment in F&W's favor

---

[16] The court noted in its order amending the judgment that GBT itself had sought to recover its attorney fees and expenses pursuant to the provisions of the contract.  Nonetheless, the issue has been preserved for our consideration because GBT objected to F&W's post-trial motion to amend seeking such an award, the court granted F&W's motion on the merits, and GBT has argued the point on appeal. *See Verizon New Eng., Inc. v. Pub. Utils. Comm'n*, 2005 ME 16, ¶ 15, 866 A.2d 844 ("An issue is raised and preserved if there was a sufficient basis in the record to alert the court and any opposing party to the existence of that issue." (quotation marks omitted)).

on GBT's counterclaims for liquidated damages. We affirm the judgment awarding F&W prompt payment remedies except to the extent that the remedy ordered by the court failed to account for the value of GBT's liquidated damages claims that the court found GBT withheld in good faith. We remand for reconsideration of that aspect of the judgment. Finally, we vacate the portion of the judgment awarding attorney fees and costs to F&W pursuant to the terms of the parties' contract, leaving the court to assess attorney fees and costs only as allowed by the prompt payment statutes.

The entry is:

> Judgment affirmed in part and vacated in part. Remanded for further proceedings as described herein.

---

Michael R. Bosse, Esq., and Conor M. Shankman, Esq. (orally), Bernstein Shur, Portland, for appellant Lewiston DMEP IX, LLC, et al.

David P. Very, Esq., Norman, Hanson & Detroy, LLC, Portland, Gavin G. McCarthy, Esq., Pierce Atwood LLP, Portland, and Michael L. Fortney, Esq. (orally), Stark & Knoll, Akron, Ohio, for appellee Fortney & Weygandt, Inc.

Business and Consumer Docket docket numbers RE-2015-06, RE-2015-11, and CV-2015-74
FOR CLERK REFERENCE ONLY