STATE OF MAINE
CUMBERLAND, ss.

SEACOAST MODULAR HOMES, )
INC., )
                       )
      Plaintiff, )
                       )
     v. )
                       )
CHANDLER O. DALZELL, JR., and )
JEANNE DALZELL, )
                       )
      Defendants. )

BUSINESS & CONSUMER COURT
DOCKET NO. BCD-RE-2020-00008

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

This is a case between homeowners and the company with which they contracted to construct their new home. Plaintiff Seacoast Modular Homes, Inc. ("SMH") brings several claims against Defendants Chandler O. Dalzell, Jr., and Jeanne Dalzell (together, the "Dalzells"), seeking to collect payment on the home SMH constructed for the Dalzells in York County, Maine. The matter presently before the Court is SMH's Motion for Partial Summary Judgment (the "Motion") on Count V of SMH's complaint for violation of Maine's Prompt Payment Act, 10 M.R.S. § 1111-1120 (the "Prompt Payment Act" or the "Act"). Because there are genuine disputes of material fact, as discussed below the Court DENIES summary judgment to Plaintiff.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate where the parties' statements of material fact and the portions of the record referenced therein "disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can affect the outcome of the case, and there is a

---

[1] The Court decides the Motion without hearing as provided by M.R. Civ. P. 7(b)(7)

1

genuine issue when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). The Court must view a party's statements of material fact in the light most favorable to the non-movant and draw all reasonable inferences in favor of the same. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. However, a party may not "rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence . . . of a fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560. A party who moves for summary judgment is entitled to judgment only if the party opposed to the motion, in response, fails to submit "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774.

The Court must therefore determine whether SMH has established facts supporting a prima facie case that the Dalzells violated Maine's Prompt Payment Act by wrongfully withholding payment.

## FACTUAL ALLEGATIONS[2]

On or about May 31, 2018 SMH contracted with the Dalzells to construct a modular home on their property in Kittery, Maine.[3] (Pl.'s Supp'g S.M.F. ¶ 1.) (the "Property") The Dalzells agreed to pay a total of $324,260.00, inclusive of allowances, for this work. (Supp'g S.M.F. ¶ 2.) There was no payment schedule in the contract, though SMH later sent the Dalzells a proposed

---

[2] The fact section herein is based on authenticated evidence; facts offered into evidence by the parties lacking such support have been disregarded. *Emery Lee & Sons, Inc. v. Acadia Ins. Grp., LLC*, 2016 Me. Super. LEXIS 38, *12 (citing *Cach LLC v. Kulas*, 2011 ME 70, ¶ 11, 21 A.3d 1015).

[3] The Court notes the evidence shows that although the Dalzells signed an agreement with SMH for this construction, SMH did not sign it in return. However, for the purposes of this Motion, the Court finds an enforceable contract nonetheless existed between the parties.

payment schedule by email dated September 12, 2018. (Defs.' Add'l S.M.F ¶ 8.) The Dalzells did make several payments as requested by SMH during construction. (Pl.'s Response to Add'l S.M.F. ¶ 9.) SMH provided specifications and design plans to the Dalzells prepared by the manufacturer of the modular home, Champion Modular Homes, Inc. (Supp'g S.M.F. ¶ 3.) These design plans did not show the final location of the propane tank for the home, but they did show gypsum board drywall on the ceiling and walls of the garage. (Defs.' Response to Pl.'s Supp'g S.M.F. ¶ 4; Defs.' Add'l S.M.F. ¶ 4 & Ex. 3.) The Dalzells signed all pages of the design plans on June 7, 2018, though they did not review them in detail. (Supp'g S.M.F. ¶¶ 5-6.) SMH subsequently commenced construction at the Dalzells' Property. (Supp'g S.M.F. ¶ 7.) SMH offered, and the Dalzells accepted, a $1,500.00 credit on the contract amount because the home would only have two heating zones in lieu of the three zones the Dalzells had envisioned. (Supp'g S.M.F. ¶ 9.)

On October 17, 2018, SMH stated in an email that its intent was to complete work on the home by that Thanksgiving, though it noted several action items the Dalzells needed to complete for that deadline to be met. (Add'l S.M.F. ¶ 11 & Ex. 6; Pl.'s Response to Add'l S.M.F. ¶ 11.) Due to numerous delays, SMH missed that target date and continued work on the home through the end of 2019. (Add'l S.M.F. ¶ 12.) These delays included problems with the paint, cracks in the ceiling, decking that needed to be installed, and electrical and plumbing issues. (Add'l S.M.F. ¶ 15.)

During 2019, SMH submitted three invoices to the Dalzells which they have not paid: #2264 of May 16, 2019 for $20,534.71; # 2283 of July 12, 2019 for $25,110; and #2375 of December 13, 2019 for $1,500. (Add'l S.M.F. ¶ 6.)

In an email dated December 13, 2019 SMH listed numerous tasks that needed to be addressed in the Dalzells' home, including ensuring the lawn was clear of weeds. (Add'l S.M.F. ¶ 12.) The original contract did not require a lawn free of weeds. (Supp'g S.M.F. ¶ 19.) On or around

3

March 31, 2020 and through May 2020, SMH attempted to schedule a day to complete the hydroseeding of the Dalzells' lawn, emphasizing that hydroseeding must occur soon to prevent a weed problem. (Supp'g S.M.F. ¶¶ 20-21.) The Dalzells granted permission to hydroseed the lawn on or around May 23, 2020. (Supp'g S.M.F. ¶ 22.) Though SMH cautioned that it was important to water the lawn, Mr. Dalzell stopped watering it shortly after the hydroseeding occurred because he felt it was futile in light of the growing weeds. (Supp'g S.M.F. ¶¶ 23, 25; Defs.' Response to Supp'g S.M.F. ¶ 25.)

On May 8, 2020, SMH sent the Dalzells a final statement, including adjustments and credits to the original contract, seeking final payment of $46,144.71 (the "Amount Owed"). (Supp'g S.M.F. ¶ 12.) SMH completed what it considered to be its work on the Dalzells' home on May 14, 2020. (Supp'g S.M.F. ¶ 10; Add'l S.M.F. ¶ 13.) The Dalzells moved into their home on June 14, 2020, approximately eighteen months after the anticipated completion date of November 2018. (Add'l S.M.F. ¶ 14.) The Property would have had a rental value of $2,200 per month from December 2018 through February 2020 and $2,400 per month from March 2020 through June 2020. (Add'l S.M.F. ¶ 16.)

The Dalzells declined to make a final payment to SMH upon the issuance of a certificate of occupancy for the home due to the lengthy delay and perceived issues with the lighting, plumbing, and lawn. (Add'l S.M.F. ¶ 7; Supp'g S.M.F. ¶ 18.) Additionally, SMH had not installed gypsum board drywall on the ceiling or walls of the completed garage save for the wall adjacent to the living space. (Add'l S.M.F. ¶ 5.) The Dalzells also take issue with the lack of recessed lighting in part of the house and the fact the propane tank was not installed in the ground, although the contract did not require either of these details. (Pl.'s Response to Add'l S.M.F. ¶ 15.) The Dalzells' propane company determined the propane tank's location and had an installer bury it;

4

though this work was not included in the contract or design specifications, SMH agreed to pay for it as a gesture of good faith. (Supp'g S.M.F. ¶ 59.)

After moving in, the Dalzells hired an inspector, Dickie Garnett, who issued a 107-page report on his findings. (Add'l S.M.F. ¶ 17.) The defects Garnett found include that the vent boots around the main plumbing vent stacks were cut during installation, resulting in water leakage; that he did not observe any vapor barriers; that some siding on the exterior was bulging or damaged; that there was no anti-tipping device on the stove; and that the kitchen sink trap was not properly installed. (Add'l S.M.F. ¶¶ 20-23, 26, 28; Supp'g S.M.F. ¶¶31-33.) He also observed other items which do not rise to defects but which are not best practices and admitted that he could not determine the cause of cracking in ceiling drywall as being related to workmanship or natural settling. (Pl.'s Response to Add'l S.M.F. ¶¶ 25, 27.) An engineer, Keith Kallberg, inspected two structural issues noted in Garnett's report and recommended that trusses in the garage and the garage wall should have been properly secured. (Add'l S.M.F. ¶ 31.) Kallberg also noted that the lally columns in the basement needed to be properly secured. (Add'l S.M.F. ¶ 32.)

Brian Carson, a general contractor, inspected the Dalzells' lawn and, after digging test pits, determined that the soil was of poor quality. (Add'l S.M.F. ¶ 33.) He replaced the lawn, which included work such as stripping trees, stumps, and rocks, grading the property, and preparing it for hydroseeding, for a total cost of $11,000, including the anticipated hydroseeding. (Add'l S.M.F. ¶ 34.) Carson stated that once seeding of a lawn is complete, a contractor should not be fully responsible for the lawn's condition if the homeowner does not water it, and that weeds are to be expected after hydroseeding. (Supp'g S.M.F. ¶¶ 48-49.) Carson, who also has experience as an excavation contractor, inspected the Dalzell's home on April 28, 2021. (Add'l S.M.F. ¶ 35.) He

estimated the cost of completing drywall in the garage to be $3,815 and to repair the various issues identified by Garnett and Kallberg to be $10,648. (Add'l S.M.F. ¶¶ 36-37; Supp'g S.M.F. ¶ 27.)

The Dalzells have asserted several counterclaims against SMH related to the construction of the Property, including breach of contract, breach of warranties, and unfair trade practices. (Supp'g S.M.F. ¶ 14.) In their counterclaims, they seek damages for problems with the lawn and the home's foundation, a lack of drywall in the garage, insufficient heating, incorrect placement of the propane tank, and a leaking roof, as well as state that SMH did not complete the work in a timely manner. (Supp'g S.M.F. ¶¶ 15-16.)

## DISCUSSION

SMH alleges five causes of action: (1) foreclosure of mechanic's lien; (2) breach of contract; (3) unjust enrichment; (4) quantum meruit; and (5) violation of Prompt Payment Act. The instant Motion seeks summary judgment only on the claim for violation of the Prompt Payment Act. As discussed below, however, even as to this one claim, the case is riven with genuine issues of material fact.[4] The factual disputes include, but are not limited to, the extent of required drywalling in the garage, who was the cause of the lengthy delay, defective construction, and the nature and extent of necessary repairs.

The Prompt Payment Act penalizes owners who do not timely pay the contractor who constructed their home. *See Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 17, 993 A.2d 1. The statute disincentivizes the withholding of payments which are properly due. *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 23, 776 A.2d 1229. However, the fact that an owner breached a construction contract does not necessarily trigger the Act's penalties. *Id.* ¶ 31. The Act's remedies are only available where payment has been "wrongfully withheld." § 1118(3). The Act "sets forth several

---

[4] And given the Court's decision on the Motion, it is unnecessary to address the Dalzells' argument that the Act does not provide an independent cause of action.

principles governing payment obligations between owners and contractors." *Cellar Dwellers, Inc.*, 2010 ME 32, ¶ 18, 993 A.2d 1. First, payment must be made "strictly in accordance with the terms of the construction contract." § 1113(1). Second, "the contractor may invoice the owner for progress payments at the end of the billing period," so long as this does not conflict with payment terms in the parties' contract, and "may submit a final invoice for payment in full upon completion of the agreed upon work." § 1113(2). Third, except as stated otherwise in the contract, payment is due "20 days after the end of the billing period or 20 days after delivery of the invoice, whichever is later." § 1113(3). If an owner does not have a "valid excuse for nonpayment . . . payments not rendered within this time frame are considered wrongfully withheld." *Cellar Dwellers, Inc.*, 2010 ME 32, ¶ 18, 993 A.2d 1 (internal citations omitted). Interest begins to accrue on the unpaid balance as of the twenty-first day, a penalty of 1% per month of all wrongfully withheld sums is imposed, and the "substantially prevailing party" is entitled, regardless of any contrary agreement, to an award of attorney's fees and expenses. §§ 1113(4), 1118(2)-(4); *see Jenkins*, 2001 ME 98, ¶ 31, 776 A.2d 1229 (clarifying that attorney's fees are available only to party which has demonstrated its entitlement to the other statutory remedies).

SMH claims that the Dalzells wrongfully withheld payment because they have not timely paid per the Act and none of the statutory exceptions apply. The Dalzells preliminarily argue that the Act does not apply because a contractor may only present a final invoice, thereby starting the statutory clock, when "the agreed upon work is completed." § 1113(2). In *Cellar Dwellers*, a homeowner materially breached a contract with a contractor for installing heating and plumbing service. 2010 ME 32, ¶ 11, 993 A.2d 1. The contractor withdrew from the worksite due to the owner's breach before completing the plumbing and heating service in the basement but sent several more invoices after stopping work. *Id.* ¶ 9. The Law Court found that though the contractor

7

was entitled to general contract damages and interest, failure to complete the work meant that the Prompt Payment Act was not triggered, and its remedies of prejudgment interest and attorney's fees were unavailable. *Id.* ¶ 22. The Dalzells assert that there is a factual dispute as to whether SMH has completed the work set out in the contract due to the numerous and significant issues needing repair, and the lack of drywall throughout the garage.

A) <u>SMH Has Not Shown the Agreed Upon Work Was Completed.</u>

There is a genuine dispute as to whether installing drywall on the ceiling and on all walls of the garage was part of the contract. Contrary to SMH's assertions, the evidence suggests the drywall *was* part of the contract and that SMH thus failed to complete the agreed upon work by not installing it prior to presenting the Dalzells with a final invoice. Whether the agreed upon work was completed is a threshold question material to the Act's applicability, *see Cellar Dwellers*, 2010 ME 32, ¶ 22, 993 A.2d 1, and on this record SMH does not get past the threshold. Consequently, this Court cannot rule as a matter of law that SMH is entitled to the Act's remedies.

B) <u>SMH Has Not Shown That the Dalzells Wrongfully Withheld Payment</u>.

Assuming *arguendo* SMH did complete the agreed upon work and the Prompt Payment Act applies, the Dalzells would be entitled to withhold payment in certain circumstances without running afoul of the Act so long as the withholding was not wrongful. *Fortney & Weygandt, Inc. v. Lewiston DMEP IX, LLC*, 2019 ME 175, ¶ 28, 222 A.3d 613. Withholding is not wrongful if the amount withheld is equal to "the value of any good faith claims arising against an invoicing contractor . . . including claims arising from unsatisfactory job progress, defective construction or materials, disputed work or 3rd-party claims." § 1118(1). The withheld payment must bear "a reasonable relation" to the claim held against the contractor, though there need not be a direct

connection between the goods and services in the contractor's invoice and the owner's rationale for withholding payment. §§ 1118(1)-(3); *Fortney & Weygandt*, 2019 ME 175, ¶ 31, 222 A.3d 613. The Court may find that the owner withholds payment based on one claim made in good faith and another which is not, and thereby impose the Act's penalties only on the wrongfully withheld portion of the payment. *Fortney & Weygandt*, 2019 ME 175, ¶ 32, 222 A.3d 613.

The Amount Owed claimed by SMH per its final invoice is $46,144.71. There is no dispute that the Dalzells have withheld this sum. The total damages claimed by the Dalzells, forming the justification for their withholding payment on said invoice, is $67,063. This sum is the total of three claims the Dalzells have made against SMH: (1) loss of use due to construction delays, resulting in $42,600 of lost rental value;[5] (2) construction defects, including lawn defects, which require $20,648 to repair; and (3) failure to complete work due to the lack of drywall in the garage, which requires $3,815 to complete. These claims are directly related to the construction of the Property. *See Fortney & Weygandt*, 2019 ME 175, ¶ 31, 222 A.3d 613.

SMH argues that the Dalzells bring these claims in bad faith. However, the Dalzells have offered evidence which supports their damage claims. SMH completed the Property nearly eighteen months after its initial target of November 2018. Hired experts uncovered a litany of construction defects in the house and issues with the lawn. There is evidence that SMH failed to compete the agreed upon work by not drywalling the garage. The total damages the Dalzells seek on these bases exceeds the amount withheld. In sum, the Dalzells have established a genuine dispute of material fact as to whether their claims against SMH were made in good faith, which

---

[5] On this summary judgment record, permeated as it is by factual disputes, the Court declines to address the legal arguments regarding loss of use value (as measured by rental value).

would enable them to rightfully withhold payment of the final invoice to SMH. On this summary judgment record, the Court cannot impose Prompt Payment Act remedies as a matter of law.

CONCLUSION

Based on the foregoing, the entry will be: Plaintiff SMH's Motion for Partial Summary Judgment on Count V of the Complaint is DENIED.

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Date: **01/27/2022**

_____
Michael A. Duddy, Judge
Business & Consumer Court

Entered on the docket: 01/27/2022