MAINE SUPREME JUDICIAL COURT

Reporter of Decisions

Decision:     2022 ME 5
Docket:       BCD-21-9
Argued:       September 8, 2021
Decided:      January 20, 2022

Panel:        STANFILL, C.J., and MEAD, JABAR, and HUMPHREY, JJ., and HJELM, A.R.J.

FORTNEY & WEYGANDT, INC.

v.

LEWISTON DMEP IX, LLC, et al.

STANFILL, C.J.

[¶1]   Lewiston DMEP IX, LLC, et al. (collectively, GBT),[1] a group of limited-purpose entities and a commercial real estate developer, appeal from a judgment entered in the Business and Consumer Docket (BCD) (*Murphy, J.*) awarding attorney fees and expenses to Fortney & Weygandt, Inc. (F&W), a commercial general contractor, pursuant to Maine's prompt payment statute, 10 M.R.S. §§ 1111-1120 (2021).[2]   GBT argues that the court erred in awarding attorney fees and expenses to F&W that were not incurred in direct pursuit of

---

[1]  Adopting the practice of the trial court and the parties, we refer to the nine appellants in this matter collectively as GBT.  The appellants are GBT Realty Corporation; Lewiston DMEP IX, LLC; Auburn DMEP IX, LLC; Turner DMEP X, LLC; West Paris DMEP X, LLC; Oakland DMEP IX, LLC; Dollar Texas Properties IX, LLC; Dollar Texas Properties X, LLC; and Dollar Properties East, LLC.

[2]  The prompt payment statute, also commonly called the Prompt Payment Act (PPA), is a collection of rules governing payment between and among parties to construction contracts and containing remedies "intended to augment damages that are traditionally available for contract or quantum meruit claims."  *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶¶ 23-24, 776 A.2d 1229.

2

F&W's prompt payment claims, including fees and expenses related to F&W's contract claims, GBT's counterclaims and affirmative defenses, and subcontractor claims brought against F&W. GBT further argues that the court abused its discretion in determining that F&W's requested attorney fees were reasonable.

[¶2]  We affirm the judgment in part but vacate the portion of the judgment awarding F&W attorney fees and expenses related to the subcontractor claims, and we remand for reconsideration of those attorney fees and expenses. We also remand for consideration of attorney fees and expenses incurred in this appeal.

## I.  BACKGROUND

### A.    2018 BCD Combined Judgment and Appeal

[¶3]  The facts of the dispute underlying this case are fully set forth in *Fortney & Weygandt, Inc. v. Lewiston DMEP IX, LLC*, 2019 ME 175, 222 A.3d 613, and are summarized here.  F&W served as general contractor in the construction of five Dollar General stores in three Maine counties pursuant to contracts with GBT.  In 2015, F&W filed three separate complaints against GBT in the Superior Court (Kennebec, Androscoggin, and Oxford Counties), seeking

enforcement of mechanic's liens and asserting claims for breach of contract and violations of the prompt payment statute with respect to the parties' contracts.

[¶4]  The lawsuits arose after GBT failed to pay amounts owed to F&W under the construction contracts.  GBT counterclaimed for liquidated damages and breaches of contract, alleging that F&W's work was incomplete or defective.  Because GBT had stopped payment to F&W, F&W in turn ceased payments to its subcontractors, which resulted in the subcontractors initiating eighteen separate lawsuits to collect the funds owed to them by F&W.  F&W's claims against GBT, GBT's counterclaims, and the claims, counterclaims, and crossclaims in the subcontractor suits were transferred and consolidated under three docket numbers in the BCD.

[¶5]  During the pendency of the lawsuits, all claims involving the subcontractors were settled.  With regard to the claims between F&W and GBT, the court entered partial summary judgment in favor of F&W on its claims for breach of contract and on portions of GBT's counterclaims.  Following a nine-day bench trial—where the parties presented "many witnesses and a mountain of documentary exhibits"—and review of post-trial briefs, the court issued a fifty-eight-page combined judgment with detailed findings on August 9, 2018. *Id.* ¶ 11.

4

[¶6] In its judgment, the court concluded that F&W was entitled to (1) a judgment in its favor on GBT's counterclaims for liquidated damages based on the affirmative defenses of waiver and equitable estoppel; (2) penalties, interest, and attorney fees under the prompt payment statute;[3] and (3) a judgment in its favor on the remainder of GBT's counterclaims alleging incomplete or defective work.[4] The court later clarified that F&W was entitled to attorney fees not only pursuant to the prompt payment statute but also under the terms of the parties' contracts.

[¶7] GBT appealed several of the court's rulings, and we largely affirmed the judgment but vacated a portion of the judgment and remanded the matter for a reconsideration of F&W's prompt payment remedies.[5] *Id.* ¶¶ 1, 37. On

---

[3] With respect to F&W's prompt payment claims, the court found that (1) F&W performed in accordance with the contracts; (2) GBT did not provide notice and an opportunity for F&W to cure any purported defects; (3) GBT did not establish that F&W had actual notice of any purported defects; (4) the funds GBT withheld were not equal to or in reasonable relation to the value of GBT's claims against F&W; and (5) GBT's claims relating to incomplete or defective work could not have been asserted in good faith.

[4] This judgment left F&W's mechanic's lien claims unresolved, but those counts were dismissed during the pendency of the first appeal of this case, discussed *infra* at ¶ 7.

[5] Specifically, we affirmed the judgment for F&W on GBT's counterclaims for liquidated damages and affirmed the award to F&W of prompt payment remedies, except to the extent that the court's remedy "failed to account for the value of GBT's liquidated damages claims that the court found GBT withheld in good faith" pursuant to 10 M.R.S. § 1118(1) and (3) (2021). *Fortney & Weygandt, Inc. v. Lewiston DMEP IX, LLC*, 2019 ME 175, ¶¶ 1, 32-33, 37, 222 A.3d 613. We also vacated the portion of the judgment allowing F&W to recover attorney fees under the parties' contracts, explaining that "[t]his, however, does not affect the court's determination that F&W[] is entitled to its attorney fees and costs pursuant" to the prompt payment statute, and left "the court to assess attorney fees and costs only as allowed by the prompt payment statute[]." *Id.* ¶¶ 1, 36-37.

June 18, 2020, the court entered a stipulated final judgment on remand by agreement of the parties. The judgment modified the amount of damages awarded to F&W and stated that "F&W's attorney fees and expenses shall be determined in a post-judgment petition pursuant to, and in accordance with, the Prompt Payment Act, 10 M.R.S.A. § 1118(4)."

**B. Award of Attorney Fees and Expenses in Post-Judgment Petition**

[¶8] F&W submitted two applications for attorney fees and expenses. In one application, F&W requested $635,522.25 in attorney fees and $8,028.71 in expenses incurred by Fortney & Klingshirn, Fortney Law Group, Stark & Knoll Co., LPA, and Pierce Atwood LLP, as well as expenses of $38,164.34 that F&W directly incurred.[6] In the other application, F&W requested $306,447.50 in attorney fees and $7,403.33 in expenses incurred by F&W's insurance counsel, Norman, Hanson & DeTroy, LLC (NHD). Both applications contained supporting affidavits with exhibits, including copies of invoices.

[¶9] GBT opposed the applications, objecting to almost three-quarters of the requested amounts, arguing that any award must compensate F&W for attorney fees and expenses incurred solely for legal work performed in prosecuting F&W's prompt payment claims. GBT argued that the following

---

[6] F&W did not seek reimbursement for $24,391 billed for "time not factually related to claims involving GBT's refusal to pay F&W."

categories of fees were not awardable under the prompt payment statute: (1) work performed addressing GBT's counterclaims and F&W's claims not brought under the prompt payment statute; (2) NHD's work as insurance counsel defending against GBT's counterclaims; (3) work related to litigation with subcontractors; and (4) work opposing GBT's appeal.[7] Finally, GBT argued that F&W did not meet its burden to prove entitlement to a significant portion of the attorney fees sought and did not exercise billing judgment.[8]

[¶10] On December 18, 2020, the court issued a judgment granting all of F&W's requested attorney fees and expenses. The following facts are taken from the court's judgment and are based on competent evidence in the record. *See Sweet v. Breivogel*, 2019 ME 18, ¶¶ 2, 23, 201 A.3d 1215. The court examined the record and determined that the claims represented in the applications shared a "common core of facts" and were not easily separable:

> The facts generated and arguments asserted by both parties about the requirements of the contract were inextricably interwoven with the allegations made by both parties about the PPA claims. Under the PPA, [F&W was] also required to defeat claims that it or another party was responsible for any "unsatisfactory job progress, defective construction or materials, disputed work or 3rd-party

---

[7] GBT stated that it had conducted a line-by-line review of the legal invoices submitted in both fee applications and categorized every contested entry with a series of code numbers. GBT submitted an affidavit describing the coding process and exhibits, including spreadsheets, listing the allegedly objectionable entries.

[8] GBT argued, for example, that the invoices had too many redactions, were related to clerical tasks or overhead, were duplicative or vague, or reflected excessive time and overstaffing.

claims." 10 M.R.S. § 1118(1). This meant, as [F&W] points out, that [F&W] had to successfully defend against any counterclaims made by [GBT].

The court thus determined that because F&W was the substantially prevailing party under the prompt payment statute, F&W was entitled to fees for time spent addressing its claims for breach of contract and GBT's counterclaims. Furthermore, the court found that NHD's fees were awardable because prohibiting "an insured litigant from seeking an award of attorney[] fees would violate" the prompt payment statute's aim of deterring owners from failing to pay on time. Finally, the court rejected GBT's categorical exclusion of entries relating to subcontractor claims, explaining that the settlement of those claims simplified the issues at trial and decreased GBT's exposure to additional fees and interest.

[¶11] The court, after having reviewed the fee applications and all attachments, and applying the "*Johnson* factors" as summarized in *Sweet*, 2019 ME 18, ¶ 25 n.4, 201 A.3d 1215,[9] determined that F&W's requested fees were

---

[9] The *Johnson* factors are a list of twelve factors that courts consider when determining whether an attorney fee request is reasonable. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Gould v. A-1 Auto, Inc.*, 2008 ME 65, ¶ 13, 945 A.2d 1225. We adopted a list of factors based on *Johnson*, stated in *Sweet* as "(1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the degree of success; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with

8

reasonable.[10]  The court also concluded that the redacted fee entries remained sufficiently detailed to determine the work's subject matter and that those services were provided as claimed.  On January 4, 2021, the court also awarded F&W the fees and expenses incurred in litigating the fee applications, based on F&W's two supplemental applications and affidavits.[11]  GBT timely appeals from the judgment.

## II.  DISCUSSION

[¶12]  Courts in Maine may award attorney fees pursuant to (1) "contractual agreement of the parties," (2) "clear statutory authority," or (3) "the court's inherent authority to sanction egregious conduct in a judicial proceeding."  *Baker v. Manter*, 2001 ME 26, ¶ 17, 765 A.2d 583.  Here, GBT does not dispute that F&W is entitled to an award of attorney fees and expenses pursuant to 10 M.R.S. § 1118(4), which makes clear that reasonable attorney

---

the client; and (12) awards in similar cases."  *Sweet v. Breivogel*, 2019 ME 18, ¶ 25 n.4, 201 A.3d 1215 (quotation marks omitted); *see Gould*, 2008 ME 65, ¶ 13, 945 A.2d 1225.

[10]  The court stated that it did not address the fourth, seventh, tenth, eleventh, or twelfth factors because it did not have any information regarding those factors and thus found them inapplicable. As for the remaining factors, the court found that the case was labor- and time-intensive for all law firms; the litigation was difficult in light of the volume of information and documents as well as numerous damages calculations; counsel was exceptionally skilled; the requested fees were comparable to each other and customary; F&W's use of its usual counsel, along with separate and local counsel, was appropriate; the results were favorable to F&W; and all attorneys are respected and able.  The court concluded that the sixth factor required no analysis.

[11]  The awarded amounts were $714,108.89 to F&W; $315,354.83 to The Phoenix Insurance Company, F&W's insurer; and $12,617 to NHD, for amounts the insurer had not yet paid.

fees and expenses "must be awarded" to F&W as the "substantially prevailing party" in its prompt payment claims.[12]  Instead, GBT argues on appeal that F&W is entitled to only those fees and expenses incurred while directly pursuing F&W's prompt payment claims.  According to GBT, the court erred as a matter of law when it applied the "common core of facts" rule in analyzing the award under the prompt payment statute and when it awarded other amounts to F&W, such as fees and expenses relating to F&W's contract claims, GBT's counterclaims and affirmative defenses, and claims relating to subcontractors. GBT also contends on appeal that the court abused its discretion in finding that F&W's requested fees were reasonable.

[¶13]  As discussed below, the court did not err in using the "common core of facts" rule to review F&W's requested attorney fees and expenses under the prompt payment statute.  Furthermore, we affirm the court's application of the "common core of facts" rule and the resulting award of attorney fees and expenses relating to F&W's contract claims and GBT's counterclaims and affirmative defenses, including NHD's fees and expenses.  We vacate the court's

---

[12]  Specifically, 10 M.R.S. § 1118(4) (2021) provides:

> **Attorney's fees.**  Notwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter must be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses.

award relating to the subcontractor claims, however, and remand for reconsideration of those attorney fees and expenses. Finally, we affirm the court's finding that the requested attorney fees and expenses were reasonable, and remand for a determination of attorney fees and expenses associated with this appeal.

## A.    Standard of Review

[¶14]  At the outset, the parties disagree as to what standard of review applies.  GBT argues that we should review de novo, as a question of law, the court's award of attorney fees and expenses because the scope of the prompt payment statute's fee recovery provision is a legal question.  F&W asserts that because the only issue regards the amount of attorney fees, we should review the judgment for an abuse of discretion.

[¶15]  Although we review the *amount* of attorney fees awarded for an abuse of discretion, we review a court's *authority* to award attorney fees de novo.  *See Kilroy v. Ne. Sunspaces, Inc.*, 2007 ME 119, ¶ 6, 930 A.2d 1060. Furthermore, "[t]o the extent that interpretation of a statute is required in conjunction with the award . . . we review the statutory construction de novo." *Id*.  A "court's factual findings with respect to the award of attorney fees will be upheld unless clearly erroneous."  *Lee v. Scotia Prince Cruises Ltd*., 2003 ME 78,

¶ 18, 828 A.2d 210.  This deference is fitting because "the trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees."  *Sweet*, 2019 ME 18, ¶ 23, 201 A.3d 1215.

## B.    Common Core of Facts

### 1.    Application of the "Common Core of Facts" Rule to Claims Under the Prompt Payment Statute

[¶16]  GBT contends the court erred as a matter of law when it applied the "common core of facts" rule to the award of fees and expenses under the prompt payment statute.  We review de novo the applicability of the "common core of facts" rule to an award of attorney fees and expenses under the prompt payment statute.  *See Kilroy*, 2007 ME 119, ¶ 6, 930 A.2d 1060.

[¶17]  The "common core of facts" rule originated in *Hensley v. Eckerhart*, where the Supreme Court of the United States reviewed an attorney fee award in a federal civil rights action involving multiple claims, only some of which were successful.  461 U.S. 424, 426-28 (1983).  In analyzing the eighth *Johnson* factor—the amount involved and the results obtained—the Supreme Court stated that when a party's claims for relief "involve a common core of facts" or are "based on related legal theories," counsel's time is often "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  *Id.* at 435.  Such lawsuits "cannot be viewed as a series

of discrete claims," and thus the court awarding fees "should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended," and not reduce a fee award simply because a party failed to win on every issue. *Id.*

[¶18] We have applied the guidelines set out in *Hensley* to, for example, an appeal of a denial of an attorney fee award in the context of a civil rights case. *See Wyman v. Town of Skowhegan*, 464 A.2d 181, 181, 185-86 (Me. 1983). We have also recognized that the "common core of facts" rule is applicable in cases where, as here, "non-fee claims are joined with fee-claims in a single action." *Poussard v. Com. Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 883, 885 (Me. 1984); *see, e.g., Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶¶ 9, 30-33, 901 A.2d 189.

[¶19] In *Pilecki*, we analyzed how courts should determine awards in cases with both fee and non-fee claims. 2006 ME 84, ¶¶ 1, 25-26, 32, 901 A.2d 189. There, the allegations all stemmed from a house construction project and included a claim under the Unfair Trade Practices Act (UTPA), which provides a statutory entitlement to attorney fees, and other claims that did not provide for attorney fees. *Id.* The contractor and its sole shareholder argued that attorney fees were not awardable "for time spent on the nonstatutory claims

and that the court abused its discretion in failing to apportion the fees between the fee and non-fee claims." *Id.* ¶¶ 3, 28.

[¶20] While we recognized that parties requesting attorney fees have the burden to "separate the costs of pursuing the fee claims from the costs of pursuing the non-fee claims," we explained that "when the fee and non-fee claims are related and arise from common facts, they may be so entwined as to make separation impossible." *Id.* ¶ 32. Additionally, if the claims all arose from facts relating to a party's UTPA violation, "the fact that damages can be attributed to a related non-fee claim does not mean that the work done jointly on the fee and non-fee claims should be disregarded in determining the amount of the fees," and the court awarding fees should instead "focus on the overall relief awarded to the prevailing party." *Id.*

[¶21] We applied the "common core of facts" analysis in *Pilecki* to the UTPA, a Maine consumer protection statute. *Id.* ¶¶ 29-30. The same analysis informs a court's award, and our review of a fee award, under the prompt payment statute, which applies to both consumer and commercial litigation.[13]

---

[13] We note that the Vermont Supreme Court has applied the "common core of facts" rule to a claim under Vermont's prompt payment act. *See Elec. Man, Inc. v. Charos*, 895 A.2d 193, 196-98 (Vt. 2006) (explaining "that allowing full attorneys'-fees recovery where there is a common core of facts is consistent with the language of the statute," which does not "limit[] attorneys'-fees recovery to representation associated with a payment-withholding claim[] to the exclusion of recovery for representation for other claims, such as breach of contract, arising out of the same controversy").

14

In *Poussard*, we recognized that civil rights litigation cases, such as *Wyman*, are not controlling but are instructive where "various provisions for attorney's fees are designed to aid in the effective enforcement of the acts in question." 479 A.2d at 883. This reasoning attendant to a determination of attorney fees in UTPA actions applies just as forcefully to claims that include violations of the prompt payment statute. With respect to a prompt payment claim, we have explained that a substantially prevailing party "*must* be awarded reasonable attorney's fees" pursuant to 10 M.R.S. § 1118(4) (emphasis added), to "provide motivation, in the form of penalties for noncompliance, for an owner, contractor, or subcontractor to make timely payments," *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 31, 776 A.2d 1229. Therefore, the court did not err in applying the "common core of facts" rule to review F&W's requested attorney fees under the prompt payment statute.

### 2. F&W's Contract Claims and GBT's Counterclaims and Affirmative Defenses

[¶22] We now turn to the court's analysis of the other claims that did not directly assert a violation of the prompt payment statute. We review the court's overall determination of attorney fees for an abuse of discretion,[14] but we

---

[14] Our review for abuse of discretion involves "three questions: (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law,

review any underlying factual findings for clear error. *See Lee*, 2003 ME 78, ¶ 18, 828 A.2d 210; *Sweet*, 2019 ME 18, ¶ 23, 201 A.3d 1215.

[¶23]  GBT contends that the court erred in awarding F&W attorney fees for work "seeking remedies for contractual claims, defending against GBT's counterclaims[,] and addressing GBT's affirmative defenses" because that work was not in pursuit of prosecuting F&W's prompt payment claims.  The court found that for F&W to succeed on its prompt payment claims, F&W had to "defeat claims that it or another party was responsible for any 'unsatisfactory job progress, defective construction or materials, disputed work or 3rd-party claims,'" under 10 M.R.S. § 1118(1), and thus that F&W had to successfully defend against any counterclaims GBT asserted.  The court also determined that "[t]he facts generated and arguments asserted by both parties about the requirements of the contract were inextricably interwoven" with the allegations relating to the prompt payment claims, and fees incurred relating to the contract claims were awardable as part of the "common core of facts" rule.

[¶24]  To succeed on its prompt payment claims, F&W had to establish that GBT did not pay F&W "strictly in accordance with the terms of the construction contract."  10 M.R.S. § 1113(1); *see Cellar Dwellers, Inc. v. D'Alessio*,

---

was the court's weighing of the applicable facts and choices within the bounds of reasonableness." *McLeod v. Macul*, 2016 ME 76, ¶ 6, 139 A.3d 920 (quotation marks omitted).

2010 ME 32, ¶ 18, 993 A.2d 1. In other words, F&W was required to prove that GBT breached the parties' contracts. Additionally, F&W had to establish that it performed in accordance with the contracts, and that GBT did not have valid claims against F&W "arising from unsatisfactory job progress, defective construction or materials, disputed work or 3rd-party claims." 10 M.R.S. § 1118(1). Therefore, to prevail on its prompt payment claims overall, F&W had to both prove GBT's breach of contract and successfully defend against GBT's counterclaims. The court did not err by concluding that F&W is entitled to attorney fees incurred both directly and indirectly in support of its prompt payment claims, because F&W was "the substantially prevailing party in [this] proceeding to recover . . . payment within the scope" of the prompt payment statute. 10 M.R.S. § 1118(4).

[¶25] To the extent that any of F&W's work fell outside of what was necessary to prove its prompt payment claims, F&W's claims against GBT and GBT's offset claims against F&W were also all based on the same facts— whether GBT breached the contracts with F&W when it refused to pay F&W pursuant to F&W's payment applications, and whether any of GBT's claimed offsets were legitimate and reduced that amount. The court thus did not abuse its discretion in determining that the contract claims and counterclaims

between F&W and GBT were based on a "common core of facts," so interwoven that separation of fee and non-fee work was not possible. *See Lee*, 2003 ME 78, ¶ 20, 828 A.2d 210 (affirming award where court determined that the issues in the complaint and counterclaim were "inextricably intertwined"); *Sweet*, 2019 ME 18, ¶¶ 23, 25, 201 A.3d 1215.[15]

### 3. NHD's Fees for its Work as F&W's Insurance Counsel

[¶26] GBT also contends that F&W is not entitled to an award of NHD's fees because NHD was hired to defend against GBT's counterclaims and not to pursue F&W's prompt payment claims. For the same reasons that the court properly found that the fees related to F&W's defense against GBT's counterclaims and affirmative defenses are recoverable, the court did not err by concluding that NHD's fees are also awardable. There is nothing in the prompt payment statute that would exclude such fees simply because NHD was hired by an insurance company. Rather, as the court explained, categorically excluding the award of NHD's fees would violate the purpose of the prompt payment statute "to deter contractors and owners from failing to timely pay for

---

[15] In *Sweet*, we affirmed the court's decision to decline an award of attorney fees relating to counterclaims, for which fees were not recoverable, because the owners relied on "bare assertions" that the claims were linked and had only a "limited degree of success," failing to prevail on many counterclaims. 2019 ME 18, ¶¶ 3, 11, 25, 201 A.3d 1215. Here, F&W provided much more than bare assertions to show the common core of facts, and the court found not only that the claims and counterclaims were "inextricably interwoven" but also that F&W had a great degree of success. These determinations by the court were, on this record, not error.

work completed under a contract they freely entered."  The court did not abuse its discretion in awarding NHD's requested fees.

### 4.     Subcontractor Lawsuits

[¶27]   GBT next argues that the court erred in "awarding fees billed defending against claims brought by subcontractors in 18 separately-captioned lawsuits which were eventually consolidated into this matter."  The court made no finding regarding whether the subcontractor claims were part of the common core of facts or inextricably interwoven with the prompt payment claims.  Rather, in finding that F&W was not categorically ineligible to recover fees for time spent resolving those claims, the court stated only that "delays and scheduling problems were avoided by the settlement of the subcontractor claims," that it was "helpful . . . for the [c]ourt, and both parties, to remove the multiple subcontractors from the case," and that removal of those claims reduced GBT's exposure to additional attorney fees and interest.

[¶28]   Although we have no reason to doubt that the resolution of the subcontractor claims indeed saved the court and the parties time, the court abused its discretion when it explicitly awarded fees based on efficiency when it did not also articulate a basis for an award of fees that would be proper under

the prompt payment statute and our interpretive case law.[16]  We vacate this portion of the judgment and remand for the court to determine the extent to which the fees may be properly awardable as part of the litigation of F&W's prompt payment claims against GBT or as otherwise inseparable from it—a determination on which we express no opinion here.

## C.  Reasonableness of Attorney Fee Award

[¶29]  GBT also contends that F&W failed to meet its burden to prove the requested fees were reasonable, as required under the prompt payment statute.  Specifically, GBT argues that the court erred in finding in F&W's favor on the eighth *Johnson* factor and in failing to find that F&W did not exercise billing judgment, and thus that the court abused its discretion in awarding all of F&W's requested fees.

[¶30]  We review the court's award for an abuse of discretion, "mindful that the trial court 'is in the best position'" to view "'the litigation as it relates to a request for attorney fees,'" *Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 12, 165 A.3d 357 (quoting *Lee*, 2003 ME 78, ¶ 20, 828 A.2d 210); *Sweet*, 2019

---

[16]  Although the removal of the subcontractor claims may have saved the court and the parties time, and reduced GBT's exposure to attorney fees and interest, courts are not authorized to award fees on this basis.  *See Baker v. Manter*, 2001 ME 26, ¶ 17, 765 A.2d 583; *Soley v. Karll*, 2004 ME 89, ¶¶ 10-11, 15, 853 A.2d 755 (vacating award and remanding, explaining that "Maine follows the American rule that litigants bear their own attorney fees," absent statutory authority, contractual provision, or egregious conduct).

ME 18, ¶ 23, 201 A.3d 1215, and will affirm the court's factual findings with respect to the award unless clearly erroneous, *Poussard*, 479 A.2d at 884.

[¶31]  Here, the court took into account "the 12 factors set out by the Law Court in deciding whether and how much to award for fees" and applied those factors on which the parties had created a record, *see supra* n.10.  The court "undert[ook] a review of the [a]pplications submitted, with the numerous attachments," and addressed each of the factors it found applicable to the case. GBT does not dispute the court's findings with respect to these factors except for the eighth factor—namely, the amount involved and the results obtained, described in *Sweet* as "the degree of success."  2019 ME 18, ¶ 25 n.4, 201 A.3d 1215 (quotation marks omitted).

[¶32]   As GBT concedes, however, no single factor is dispositive. *See Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).  Furthermore, we have stated that the result obtained in the litigation is "[t]he most important of the *Johnson* factors."  *Wyman v. Sec'y of State*, 625 A.2d 307, 312 (Me. 1993); *see also Wyman*, 464 A.2d 181, 186 (Me. 1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." (quoting *Hensley*, 461 U.S. at 435)).  Here, the court found that "the results obtained were quite favorable for [F&W] overall," a finding that our prior decision in this matter

supports. *See Fortney & Weygandt, Inc.*, 2019 ME 175, ¶¶ 1, 10, 222 A.3d 613. The court also found that it was appropriate for F&W to retain its usual litigation firm, local counsel, and separate counsel.[17] The court thoughtfully considered the applicable factors, and its determination was not an abuse of discretion but instead was "within the bounds of reasonableness." *Homeward Residential, Inc.*, 2017 ME 128, ¶ 15, 165 A.3d 357 (quotation marks omitted).[18]

[¶33] GBT also argues that the court erred in failing to find that F&W did not exercise billing judgment. The court concluded, however, that F&W "met its burden of proving that it is entitled to the award requested, that the work was performed as documented, and that the fees are reasonable." It found "after reviewing the fee entries that they are sufficiently detailed, even when

---

[17] GBT argues that the court failed to "weigh the[] results against the overall amount of fees," to "engage in the analysis required by *Hensley* or *Wyman*, or [to] consider F&W's success with respect to the PPA claims versus GBT's counterclaims and withholding, or consider success with respect to the subcontractor claims." GBT failed to move for additional findings of fact and conclusions of law, and thus "pursuant to M.R. Civ. P. 52(b), we will infer that the trial court made any necessary findings that would be supported by evidence in the record to support its ultimate conclusion." *Doe v. Tierney*, 2018 ME 101, ¶ 15, 189 A.3d 756; *see Estate of Sheltra*, 2020 ME 108, ¶ 24, 238 A.3d 234; *see also Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 34, 901 A.2d 189 ("We assume that in reaching its determination of the fee amount, the court took into consideration both the relatedness of the fee and non-fee claims and the result that the Pileckis obtained from the lawsuit.").

[18] GBT also faults the court for failing to "make any findings concerning the expenses at all." Yet, GBT failed to move for additional findings of fact and conclusions of law on this issue. Other than the expenses incurred in connection with the subcontractor claims, the award of which we vacate for the reasons discussed above, we therefore assume that the court made the findings necessary to support its award of expenses related to the litigation, *see Doe*, 2018 ME 101, ¶ 15, 189 A.3d 756, and we are satisfied that the record supports those inferred findings.

redacted . . . and that the hours were actually expended." Given the broad discretion afforded to courts in determining the reasonableness of fees, we affirm the court's determination.[19] *See Poussard*, 479 A.2d at 886.

## D.      Determination of Fees and Expenses for this Appeal

[¶34]   Finally, we remand to the court to determine whether F&W is entitled to attorney fees and expenses for this appeal and, if so, the amount of any such award.

### III.  CONCLUSION

[¶35] We affirm the court's award of attorney fees and expenses relating to F&W's contract claims and GBT's counterclaims and affirmative defenses, including NHD's fees, as having been generated either directly from or within the "common core of facts" of the prompt payment claims, and we affirm the court's finding that the requested attorney fees and expenses were reasonable. We vacate, however, the court's award relating to the subcontractor claims and

---

[19] GBT argues that the court "did not engage in any discussion of whether or not F&W's attorneys exercised billing judgment," and that the court did not address GBT's arguments regarding duplicative, inefficient, and vague entries, or entries reflecting overstaffing, clerical tasks, and overhead. Despite raising these contentions in its briefs, GBT again failed to make a motion for additional findings of fact and conclusions of law, and thus "we will infer that the trial court made any necessary findings that would be supported by evidence in the record to support its ultimate conclusion." *Doe*, 2018 ME 101, ¶ 15, 189 A.3d 756.

remand for reconsideration of those attorney fees and expenses, as well as the attorney fees and expenses associated with this appeal.

The entry is:

> Judgment affirmed in part and vacated in part. Remanded for further proceedings consistent with this opinion.

---

Michael R. Bosse, Esq. (orally), Conor M. Shankman, Esq., and Benjamin W. Dexter, Esq., Bernstein Shur, Portland, for appellant Lewiston DMEP IX, LLC, et al.

David Very, Esq., Norman, Hanson & DeTroy, LLC, Portland; Gavin G. McCarthy, Esq. (orally), and Joshua D. Dunlap, Esq., Pierce Atwood LLP, Portland; and Michael L. Fortney, Esq., Stark & Knoll, Akron, Ohio, for appellee Fortney & Weygandt, Inc.

Business and Consumer Docket docket numbers RE-2015-6, RE-2015-11 and CV-2015-74
FOR CLERK REFERENCE ONLY