

STATE OF MAINE
SAGADAHOC, ss.

RYAN MCDERMOTT, and
MEGAN O'NEILL,

        Plaintiffs/Counterclaim
        Defendants,

    v.

LAURIE E. HEGARTY,

        Defendant/Counterclaim
        Plaintiff

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-21-13

**ORDER ON CROSS MOTIONS FOR**
**SUMMARY JUDGMENT**

## INTRODUCTION

The matters pending before the court are cross motions for summary judgment filed by plaintiff/counterclaim defendants Ryan McDermott and Megan O'Neill (collectively, "the McDermotts") and defendant/counterclaim plaintiff Laurie Hegarty.

## BACKGROUND

The following facts are drawn from the properly supported undisputed statements of material fact.[1] *See* M.R. Civ. P. 56.

The McDermotts own property located at 247 Marrtown Road in Georgetown, Maine by virtue of a deed dated April 20, 2019 and recorded at the Sagadahoc County Registry of Deeds at Book 2019R, Page 02482. (Pl.'s Supp.'g S.M.F. ¶ 1.) Ms. Hegarty owns abutting property located at 255 Marrtown Road in Georgetown, Maine, by virtue of a deed dated August 17, 2017 and recorded in the Sagadahoc County Registry of Deeds at Book 2017R, Page 05791, and a later deed dated July 15, 2021 and recorded at the Sagadahoc County Registry of Deeds at Book 2021R, Page 06051. (Pl.'s Supp.'g S.M.F. ¶

---

[1] Ms. Hegarty has invoked M.R. Prof. Conduct 4.1 and M.R. Civ. P. 11, arguing that Mr. McDermott and his attorney have perjured themselves in affidavits currently before the court. These claims have no merit.

1

2.) Previously, both properties were owned by James R. Peacock and Roselene F. Peacock. (Pl.'s Supp.'g S.M.F. ¶ 4.)

On December 3, 1984, the Peacocks sold a portion of the Georgetown property to Leroy A. Vander Putten and Evon Vander Putten. (Pl.'s Supp.'g S.M.F. ¶ 4.) The Vander Puttens are the predecessors in title to the McDermotts. (Pl.'s Supp.'g S.M.F. ¶ 5.) The deed transferring the portion of the Peacocks' property that the McDermotts now own to the Vander Puttens contains the following express easement:

> Said property is conveyed together with an easement to run with the land for the use of a dock extending in Deep Cove from the adjacent property being retained by James R. Peacock and Roselene F. Peacock and for access to said dock across the extreme southeasterly corner of the remaining land of said Peacock.
>
> Such access shall be by foot only and such use shall be exercised in common with James R. Peacock and Roselene F. Peacock in such a way so as not to disrupt or disturb the use of said dock by the Peacocks. By acceptance of this deed the Grantees agree for themselves, their heirs and assigns, that they will contribute fifty percent (50%) of all reasonable maintenance cost of said docking facility and agree that they will secure no more than one small boat at any one time to the dock it being understood by all parties that large boats serviced by the dock shall be moored or anchored offshore and reached by small boat. Nothing in this easement shall require the Peacocks, their heirs and assigns, to replace or repair the dock if said dock should be substantially destroyed by storm, ice, fire, or other casualty unless the Grantees, their heirs and assigns, tender payment of one-half (1/2) of the replacement or repair cost in which case the Grantors agree that such dock will be replaced. James R. Peacock and Roselene F. Peacock, their heirs and assigns, shall have the sole authority to designate who will do any work or supply any materials in connection with any maintenance, minor repair, replacement, or major repair of said dock.

(Pl.'s Supp.'g S.M.F. ¶ 5.) On April 30, 2019, the Vander Puttens sold the property to the McDermotts via warranty deed recorded in the Sagadahoc County Registry of Deeds at Book 2019R, Page 02482. (Pl.'s Supp.'g S.M.F ¶ 12.)

On September 25, 1989, the Peacocks sold the portion of their Georgetown property containing the dock named in the easement to Malcolm and Laura Gauld, Ms. Hegarty's predecessors in title. (Pl.'s Supp.'g S.M.F. ¶¶ 6-7.) The deed transferring title

2

to the Gaulds transferred the property "subject to an easement conveyed by James R. Peacock, et al. to Leroy A Van DerPutten, et al. by deed recorded in the Sagadahoc County Registry of Deeds." (Pl.'s Supp.'g S.M.F. ¶ 7.)

On August 17, 2017, the Gaulds sold their property to Ms. Hegarty and her ex-husband, Thomas Hegarty, via warranty deed recorded at the Sagadahoc County Registry of Deeds at Book 2017R, Page 05791. (Pl.'s Supp.'g S.M.F ¶ 8.) The deed transferring title from the Gaulds to the Hegartys contained the following language:

> SUBJECT to an easement conveyed by James R. Peacock, et al, to Leroy A. Van DerPutten, et al, by deed recorded in the Sagadahoc County Registry of Deeds in Book 686, Page 343.

(Pl.'s Supp.'g S.M.F ¶ 9.) Pursuant to the terms of her divorce, Ms. Hegarty acquired sole ownership of the property via quitclaim deed dated July 15, 2021 and recorded in the Sagadahoc County Registry of Deeds at Book 2021R, Page 06051. (Pl.'s Supp.'g S.M.F ¶ 10.)

A dock existed on the property when Ms. Hegarty purchased it, though it was already in a state of disrepair. (Pl.'s Supp.'g S.M.F ¶¶ 23, 28.) Ms. Hegarty has not performed any maintenance on the dock since acquiring the property and has not had the dock inspected to determine if it is safe to put in the water. (Pl.'s Supp.'g S.M.F ¶¶ 25-26, 29.) Ms. Hegarty has never attempted to put the dock in the water. (Pl.'s Supp.'g S.M.F ¶ 28.)

Since acquiring the dominant estate, the McDermotts have asked Ms. Hegarty several times to put the dock in the water so they could use it. (Pl.'s Supp.'g S.M.F ¶¶ 31-32.) Ms. Hegarty has refused all of these requests and told the McDermotts to get off of her property when they attempted to cross it. (Pl.'s Supp.'g S.M.F ¶ 33.) After Ms. Hegarty refused to either put the dock in the water or repair it, Mr. McDermott retained Kennebec Marine Services to provide an estimate for replacing the existing dock. (Pl.'s

3

Supp.'g S.M.F ¶ 34.) The initial estimate, dated September 1, 2020, was $7,300 for the installation of a new float and ramp similar in size to the existing dock. (Pl.'s Supp.'g S.M.F ¶ 35.)

The parties agree that Mr. McDermott tendered half of this initial estimate to Ms. Hegarty. (Pl.'s Supp.'g S.M.F ¶ 36; Opp. to Pl.'s Supp.'g S.M.F ¶ 36.) The parties also agree that at some point Mr. McDermott received a second estimate from Kennebec Marine Services, dated April 5, 2021, which included installation of the ramp, float, and mooring blocks for $11,690. (Pl.'s Supp.'g S.M.F ¶ 39; Opp. to Pl.'s Supp.'g S.M.F ¶ 39.) However, the McDermotts aver that they only obtained the second quote after Ms. Hegarty refused the check for half of the initial quote, while Ms. Hegarty points out that the check was dated July 27, 2021, several months after Mr. McDermott received the updated quote. (Pl.'s Supp.'g S.M.F ¶ 36; Opp. to Pl.'s Supp.'g S.M.F ¶ 36.)

Regardless of the timing, the parties agree that Ms. Hegarty has refused the check from Mr. McDermott on the basis that the deed gives her sole discretion to choose a vendor to perform maintenance work on the dock. (Pl.'s Supp.'g S.M.F ¶ 37.) Ms Hegarty has not made any attempt to secure a vendor to repair or replace the dock. (Pl.'s Supp.'g S.M.F ¶ 38.) The parties further agree that the McDermotts have repeatedly attempted to exercise what they believe are their rights under the easement. (Pl.'s Supp.'g S.M.F ¶ 42.)

The previous owners of the Hegarty and McDermott properties understood the easement to be a general use grant with few restrictions. (Pl.'s Supp.'g S.M.F ¶ 62.) The Vander Puttens and their guests used the dock for a variety of activities, including fishing, swimming, sunbathing, boating, kayaking, canoeing, and socializing. (Pl.'s Supp.'g S.M.F ¶ 63.) In addition to these general activities, the Vander Puttens secured a small boat to the dock for access to their larger boat moored offshore. (Pl.'s Supp.'g S.M.F ¶ 64.)

4

The McDermotts eventually filed a declaratory judgment action and request for a permanent injunction against Ms. Hegarty on October 13, 2021. The McDermotts seek the following relief: (1) a declaration that the McDermotts have a permanent, appurtenant, perpetual, express deeded easement over the Hegarty Property; (2) to permanently enjoin Ms. Hegarty from blocking the Easement as described in the deeds; (3) to order Ms. Hegarty to repair or replace the dock; and (4) award the McDermotts their interest, costs, and attorney's fees.

Ms. Hegarty filed an Answer and Counterclaims, including her own claim for declaratory and injunctive relief and a claim for common law trespass. Ms. Hegarty seeks: (1) a declaration that the McDermotts' continued use of her property for any purpose other than accessing a single small boat on the dock when the dock is present and functional exceeds the scope of their easement rights; (2) grant a mandatory injunction ordering the McDermotts to refrain from using the shore of the Hegarty Property for general recreation or swimming access; and (3) award Ms. Hegarty costs in bringing the action. Ms. Hegarty has not moved to amend her Counterclaims, but now appears to have taken the position that she is owed contribution for the maintenance that she never performed. (Opp. to Pl.'s Mot. Summ. J. 15.)

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 5 6(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this

5

rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). I n order to controvert an opposing party's factual statement, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). Assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 9, 19 A.3d 815.

## DISCUSSION

The cross motions for summary judgment both concern the same issue: the scope of the easement in the parties' deeds. The parties do not dispute that an easement exists or assert that it has been abandoned or otherwise destroyed. Ms. Hegarty asks the court to adopt an extremely limited reading of the language in the deed, so that all that the easement would permit is access to the dock for the purpose of boarding or deboarding a small boat, and only when Ms. Hegarty has chosen to put the dock in the water in a serviceable condition. Ms. Hegarty asks the court to read the easement to not allow the McDermotts to invite family or friends to use the dock with them, or to use the dock for other purposes such as swimming, fishing, or socializing. While this is only implicit in her filings, Ms. Hegarty has clearly taken the position that she is under no obligation to maintain the dock for the benefit of the McDermotts. The McDermotts, on the other hand, believe that they have a general right to use the dock for a variety of recreational purposes, that Ms. Hegarty must maintain the dock in a serviceable condition, and that they are obligated to pay 50% of the reasonable costs of maintenance.

"An easement appurtenant is created to benefit the dominant tenement and runs with the land." *O'Donovan v. McIntosh*, 1999 ME 71, ¶ 7, 728 A.2d 681. "The scope of a party's easement rights must be determined from the unambiguous language on the face of the deed. Only if language in a deed is ambiguous may a court consider extrinsic evidence to determine the intent of the parties." *Matteson v. Batchelder*, 2011 ME 134, ¶

6

16, 32 A.3d 1059 (quoting *Jordan v. Shea*, 2002 ME 36, ¶ 14, 791 A.2d 116). "Language is ambiguous when it is reasonably susceptible to different interpretations." *Beckerman v. Conant*, 2017 ME 142, ¶ 13, 166 A.3d 1006.

Interpretation of the Deed

The parties agree that the deed language is unambiguous, and that the easement runs with the land. The parties only disagree about how the court should construe the deed language. The court agrees that the deed language is unambiguous and will interpret the scope of the easement without resorting to extrinsic evidence.

The deed characterizes the easement owned by the McDermotts as one "for the use of a dock extending in Deep Cove from the adjacent property," what is now Ms. Hegarty's property, "and for access to said dock across the extreme southeasterly corner of [the property]." The meaning of this language is clear: the McDermotts may cross Ms. Hegarty's land by the extreme southeasterly corner to access and use the dock in dispute.

The deed goes on to impose restrictions. First, "[s]uch access shall be by foot only." This restriction is self-explanatory.

Second, "such use shall be exercised in common with James R. Peacock and Roselene F. Peacock in such a way so as not to disrupt or disturb the use of said dock by the Peacocks." This restriction forbids the McDermotts from exercising their easement rights in a way that would disrupt Ms. Hegarty's use of the dock. In simpler terms, the parties must share the dock.

Third, "the Grantees agree for themselves, their heirs and assigns, that they will contribute fifty percent (50%) of all reasonable maintenance cost of said docking facility. . . ." This obligation is also self-explanatory. The McDermotts must contribute half of all reasonable upkeep costs. Ms. Hegarty has argued that this entitles her to half of the reasonable maintenance costs for a period where she was not maintaining the dock and

7

includes a time period where the McDermotts were not the title owners. Nothing in this language implies that the easement owners are required to contribute to the maintenance of the dock before Ms. Hegarty actually performs any maintenance.

Fourth, "[the McDermotts] will secure no more than one small boat at any one time to the dock it being understood by all parties that large boats serviced by the dock shall be moored or anchored offshore." Again, this restriction is self-explanatory.

Reading all of this language together, it is clear that the easement was intended to grant the McDermotts the ability to use the dock for any purposes that would not interfere with Ms. Hegarty's own use of the dock, not only to dock a single boat when Ms. Hegarty decides to put the dock in the water. This includes general recreation activities, such as fishing and swimming, which is consistent with the use of the easement by prior easement holders. Docks can be used for a variety of recreational purposes, including fishing and swimming, and are not exclusively used for storing boats as Ms. Hegarty seems to believe. All use restrictions were expressly provided in the text of the deed, and there is no reason to believe that the original grantors intended to restrict the use of the dock any more than they did with express language.

Ms. Hegarty argues that the use of the term "docking facility" once within the easement language somehow defines the term "dock" used throughout the easement language. Ms. Hegarty argues that a "docking facility" is a more limiting term than "dock." According to Ms. Hegarty, a "docking facility" can only be used for boats to dock and cargo and people to be loaded and unloaded from them. This is an arbitrarily restrictive reading of the easement language. Further, the term "docking facility" is never defined in the deed, certainly not in such a restrictive way. The record is clear that the dock was used for general recreation purposes by previous owners, and as the court has pointed out already, this is common for docks of this size and character. The court will

8

not credit such an unnatural reading of the deed language when there is an obvious intent to convey a general use grant to share the dock.

Turning now to the obligation to maintain the dock, the court must start from the principle that, in general, "the holder of the servient estate has no duty to the beneficiary of an easement or profit to repair or maintain the servient estate or the improvements used in the enjoyment of the easement" unless expressly provided by the easement language. Restatement (Third) of Property § 4.13. Normally, the holder of an easement has a duty to maintain the easement necessary to its use. *See Cote v. Miville*, No. CV-16-148, 2018 Me. Super. LEXIS 76, at *20 (Feb. 28, 2018). However:

> Joint use by the servient owner and the servitude beneficiary of improvements used in enjoyment of an easement or profit, or of the servient estate for the purpose authorized by the easement or profit, gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate or improvements used in common.

*Id.*

In this case, the deed language is clear that both parties have the right to use the dock. In addition, the language explicitly provides that the McDermotts shall provide 50% of the reasonable costs of maintaining the dock, which implicitly states that Ms. Hegarty will bear primary responsibility for its maintenance.

Ms. Hegarty is responsible for maintaining the dock in a serviceable condition for the benefit of the McDermotts, even if she does intend to use the dock herself. Ms. Hegarty is then entitled to recoup 50% of her reasonable costs from the McDermotts. The easement does not give Ms. Hegarty the discretion to decide whether or not to maintain the dock, or to condition her performance of this responsibility on the extraction of

9

concessions from the McDermotts.[2] This is supported by the language of the casualty provision, which provides:

> Nothing in this easement shall require the Peacocks, their heirs and assigns, to replace or repair the dock if said dock should be substantially destroyed by storm, ice, fire, or other casualty unless the Grantees, their heirs and assigns, tender payment of one-half (1/2) of the replacement or repair cost in which case the Grantors agree that such dock will be replaced. James R. Peacock and Roselene F. Peacock, their heirs and assigns, shall have the sole authority to designate who will do any work or supply any materials in connection with any maintenance, minor repair, replacement, or major repair of said dock.

This clause conditions Ms. Hegarty's obligation to repair or replace the dock after it has been substantially destroyed by a casualty event on receiving payment from the McDermotts. This clause would be redundant if Ms. Hegarty was not ordinarily required to maintain the dock for the benefit of the McDermotts. Reading the deed as a whole, it is clear that Ms. Hegarty has an affirmative obligation to maintain the dock for the benefit of the McDermotts, subject to an obligation by the McDermotts to contribute 50% of those reasonable maintenance costs.

The Casualty Clause

The casualty clause creates a separate right for the grantors, now held by Ms. Hegarty, that expressly provides that she is not obligated to replace the dock if it is substantially destroyed by a casualty event. Her only obligation to repair or replace the dock is triggered under this language when the easement holders, the McDermotts, tender payment of half of the repair cost to replace the dock. If and when the McDermotts do so, the easement language clearly states that Ms. Hegarty *must* repair the dock, or if

---

[2] For example, Ms. Hegarty has suggested that if the McDermotts were to succeed in this lawsuit, she would impose certain "House Rules" governing the use of the dock. Ms. Hegarty does not have the right to condition the McDermotts use of the dock in this way. The McDermotts have a property right in the use of the dock, granted to them by the easement, which Ms. Hegarty may not interfere with.

10

repair is not feasible, replace the dock. However, Ms. Hegarty is also given sole authority to select the vendor to perform the work.

Reading the deed language as a whole, the process if the dock is destroyed by a casualty event is clear. If a casualty event substantially destroys the dock, Ms. Hegarty is under no obligation to repair the dock unless the McDermotts tender payment of half of the cost of replacement or repair by a vendor of Ms. Hegarty's choosing. This does not entitle the McDermotts to obtain a quote of their own and pay half of that cost to trigger Ms. Hegarty's obligations. Conversely, it would be an absurd reading of the deed language to hold that Ms. Hegarty is entitled to avoid her repair obligations by refusing to select a vendor. Ms. Hegarty must select a vendor and obtain a quote for the necessary work within a reasonable period of time upon the McDermotts expressing an interest in repairing the dock, but she is not obligated to begin the work until the McDermotts tender payment of half of that quote, assuming it is reasonable.

Regardless, the record on this summary judgment motion does not indicate that a casualty event occurred. Aside from a suggestion by the McDermotts that the current state of the dock was likely caused by storm, ice, or fire, neither party has identified a specific casualty event that caused the dock's current state. Rather, it seems clear from the undisputed facts that Ms. Hegarty's predecessor in title stopped maintaining the dock at some point and allowed it to fall into disrepair, and Ms. Hegarty continued this pattern of neglect due to her personal disinterest in using the dock. The casualty clause has not been triggered by these facts.

Trespass

There remains no issue of material fact that the McDermotts exceeded the scope of their easement and engaged in common law trespass. The only allegation which could, in theory, support a trespass claim is Ms. Hegarty's allegation that she observed Mr.

11

McDermott run naked across her yard after swimming naked. Her citation for this statement of fact is to her affidavit, which contains no such allegation. In summary judgment practice, "the court is neither required nor permitted to independently search a record to find support for facts offered by a party." *HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 8, 28 A.3d 1158. Additionally, Ms. Hegarty's claim for common law trespass is explicitly based on the McDermotts exceeding the scope of the easement and does not center this allegation.

The undisputed facts only indicate the McDermotts undertaking reasonable efforts to preserve their easement rights while Ms. Hegarty took aggressive steps to interfere with those rights. Summary judgment will be granted to the McDermotts on Ms. Hegarty's common law trespass claim.

<u>Costs and Fees</u>

The court will grant the McDermotts' request for costs, but will not grant attorney fees. Costs are awarded as a matter of course to the prevailing party. M.R. Civ. P. 54; *Landis v. Hannaford Bros.*, 2000 ME 11, ¶ 5, 754 A.2d 958.

Attorney fees are generally not awarded to a prevailing party, under the "American rule" which requires litigants to bear their own attorney fees. *Indorf v. Keep*, 2023 ME 11, ¶ 15, 288 A.3d 1214. There are three exceptions to the American rule recognized in Maine; "(1) [a] contractual agreement of the parties, (2) clear statutory authority, or (3) the court's inherent authority to sanction egregious conduct in a judicial proceeding." *Id.* (quoting *Fortney & Weygandt, Inc. v. Lewiston DMEP IX, LLC*, 2022 ME 5, ¶ 12, 267 A.3d 1094). None of the exceptions apply here. There is no relevant contract between the parties and no statutory authority for an award of attorney fees in this context. Ms. Hegarty's conduct in this litigation does not rise to the level of egregious conduct required for an award of attorney's fees. *See Baker v. Manter*, 2001 ME 26, ¶ 14,

12

765 A.2d 583 ("[t]he trial court's authority to sanction parties and attorneys for abuse of the litigation process should be sparingly used and sanctions imposed only when the abuse *of [the litigation] process* by parties or counsel is clear.") (quotation marks omitted).

## CONCLUSION

In light of the above, the McDermotts Motion for Summary Judgment is hereby GRANTED. Judgment is entered for the McDermotts. The Court declares the rights of the parties as follows:

(1) The McDermotts own a permanent, appurtenant, express deeded easement over the Hegarty Property which entitles them to use the dock for a variety of recreation activities, including, but not limited to, fishing, swimming, and boating. The McDermotts' use of the dock is only limited by the express limitations contained within their deed, including that such use may not interfere with Ms. Hegarty's own enjoyment and use of the dock.

(2) Further, that Ms. Hegarty has an affirmative obligation to maintain the dock in a serviceable condition for the benefit of both parties, for which she may seek 50% of reasonable costs from the McDermotts after she incurs such expenses; and

(3) That Ms. Hegarty is enjoined from interfering with the McDermotts exercise of their rights under the easement.

To further clarify the obligations of the parties moving forward, Ms. Hegarty must select a vendor to repair the dock to a serviceable condition. If repair is not possible, she must replace the dock such that it can be used for the same range of recreational activities as it has been used historically, including fishing, swimming, and mooring of at least two small boats. Once she has undertaken to repair the dock to a serviceable condition, Ms.

13

Hegarty may seek contribution for 50% of the cost of that work, assuming that such fees are reasonable.

Accordingly, Ms. Hegarty's Motion for Summary Judgment is hereby DENIED.

The court GRANTS the McDermotts costs and DENIES the request for attorney fees.

Any pending motions not previously addressed are deemed MOOT by the issuance of this judgment. This is intended to be a final judgment of the court.

DATED: May 30, 2023

Daniel I. Billings, Justice
Maine Superior Court

14